Grimke, J.
The error relied upon appears in a bill of exceptions. 388] The defendant in error was summoned as a witness *in a trial before a justice of the peace, in which the plaintiff in error was a party, and questions being put to him by the plaintiff in error, he refused absolutely to answer, on the ground that his answers would criminate him. This action was brought by the plaintiff in error against the witness, for refusing to testify, under section 105 of the justice act, 29 Ohio L. 189. On this trial the plaintiff produced evidence to show what were the questions proposed to the defendant, and also to prove that any answers to the same could not possibly implicate him. But this testimony was excluded by the court, on the ground that the witness was the sole judge whether his answers to any questions put to him would have the effect of criminating him. The plaintiff also offered evidence to prove that the justice of the peace, on the trial before him over, ruled the objection of the witness, and directed him to testify. But this evidence also was excluded.
Two questions seem to be involved in the present inquiry:
I. Was the decision of the magistrate that the witness ought to testify so conclusive as to render his silence inexcusable, and thus to authorize a suit against him for falsely and willfully refusing to *339 give evidence? 2. Admitting that the witness is himself the exclusive judge whether his testimony will tend to criminate him, does this privilege, therefore, absolve him from a suit, the object of which is to show that his refusal was without foundation, and that he might have afforded his testimony to the person calling him, with perfect safety to himself ? These two questions are very distinct, and must not be confounded. The rule laid down on the trial of Col. Burr, 1 Rob. 242, was the first attempt to give a clear and detailed exposition of the practice of the court as to the first branch of the inquiry. It is there declared, that “it is the province of the court to judge whether any direct answer to the question proposed, will furnish evidence against the witness.” The rule had before been laid down in general terms, that the witness is himself to be the judge, and it is difficult to perceive how the court can be the judge, if the bearing of the testimony which is sought to be disclosed is a secret locked up in *the [339 bosom of the witness, and if to give a reason why he declined to testify, should have the effect of partially revealing that secret, The court can only.be enabled to judge, when if understands the situation of the witness. To understand that, may require a disclosure from the witness of his reasons for withholding his testimony, and yet in giving these reasons he may furnish a necessary link ,in the chain of testimony against himself. The rule laid down in the case of Col. Burr, therefore, must not be considered as one of universal application, because there may be cases in which the court are absolutely unable to judge. But the rule was undoubtedly correct .in that particular case; for the witness did voluntarily give his reasons for refusing to testify. He was desired to decipher a certain letter, and the witness was asked if he understood the cipher. He was afraid of being implicated in the misprision of treason which that knowledge might imply, but inasmuch as his present knowledge, his knowledge at the trial, did not necessarily imply that he was before acquainted with the meaning of the cipher, and the contents of the letter, so as to involve him in the guilt of knowing and concealing the treason, it was held that he might testify. The court did not decide that he must testify. A case was supposed in which the witness might safely answer the question proposed, without undertaking to decide whether that was the case of the witness. The chief justicej therefore, very properly limits the generality of the rule which he *340 had before laid down. He says, “ if tho answer may disclose á fact, which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict the witness of any crime, he is not bound to answer it.” “ In such a case, the witness must himself judge what his answer will bo, and if he say on oath, that he can not answer without accusing himself, he can not be compellod to answer.” That is, inasmuch as it is impossible for the court thoroughly to understand the situation of the witness, or to comprehend the bearing which his testimony may have on his past actions and conduct, he must necessarily, in the last re-840] sort, be the judge himself what will be the effect *of that testimony. And thus, the rule laid down on that celebrated trial does not, after all, differ materially from the rule as before understood. To make the witness the judge what will be the effect of his answers, might seem to be fraught with great danger and inconvenience, but in reality it has none of these inconveniences. It happens in this, as in a great many other instances, that as soon as a theoretical rule is reduced to practice, it becomes perfectly harmless. For a witness to refuse to testify, because his testimony may criminate him, is at once to pronounce his own turpitude. Not one man in a thousand would, without reasont venture upon so perilous a situation. The mischief to the witness is so onormous as to counteract the mischief on the other side, and to render the rule in its operation both a wise and salutary one.
In the United States v. Smith, 4 Day, 123, which was an action to recover a penalty for transporting slaves from one foreign port to another, a particeps criminis, after the expiration of two years from the commission of the offense, without any prosecution commenced against him, was compelled to testify against the defendant, although it was objected that he had fled from justice, and consequently was excluded from the benefit of the statute of limitations. The court declared that they would take care that no prosecution should be commenced against the witness. I do not know that the principle of this decision can be defended to tho extent to which it goes, even admitting that a witness is bound to answer, where his answers will only disgrace, and not criminate him, a very disputed question even at the present day. But two things are to be noticed as worthy of observation: fltst, that tho witness himself placed the court in possession of his situation, and *341 secondly, that the court forbid the attorney general from instituting a prosecution against him. The court supposed, at any rate, that these circumstances furnished a sufficient exception to the general rule.
In the case of the People v. Mather, 4 Wend. 229, which was a prosecution growing out of the Morgan affair, a witness was offered, who refused to testify, because his testimony *might [341 have a tendency to criminate him. It was at first suggested that inasmuch as a prosecution for the abduction of Morgan was barred by the statute of limitations, the witness might safely testify, but, on the other hand, as there was no statute of limitations to the murder, it was decided that the witness was not bound to testify. I confess I do not see how he could be compelled to testify, if there-had been no murder, provided a witness is not bound to answer any question which will disgrace him, or involve him in shame or reproach. The People v. Herrick, 13 Johns. 82.
The bill of exceptions in the present ease states that the magistrate overruled the objection of the witness, and directed him to testify; but what were his reasons for so doing, under what circumstances he made that decision, is nowhere disclosed. To determine that the court of common pleas erred in refusing to hear testimony that the magistrate did so decide, without understanding what'were his reasons, would be to determine at random. There are cases in which the decision of a court speaks for itself; but this is one in which it is indispensable to know the ground on which it has proceeded, as well as its final determination. It does not appear but what the witness was right, and the magistrate wrong. The mere fact that the magistrate overruled the scruples of the witness, is not sufficient to enable .this court to say whether the witness willfully and falsely refused to testify.
But as to the second branch of the case, it seems to be supposed that if the witness is in the last resort, the exclusive judge of what will be the tendency of his answers to certain questions, that this not only protects him fro"m giving testimony, but protects him also from a suit the object of which is to show that his refusal was without foundation, that it was both willful and false. It is supposed, in other words, that the decision of the witness is without appeal, not merely on the trial where he is offered, but in any future proceeding which may be set on foot for the purpose of elucidating the truth. Such, however, does not appear to me to be *342, 343 a fair inference; and the protection which is thrown around the 31-2] witness as such *is rather a reason why he should be subjected to an action if he has abused that privilege. It will be remarked that the reason why the witness is not bound to testify,- is not because he may not be proved to have been guilty of a crime, but because he shall not be compelled to prove the fact himself. The existence of the privilege as such has no connection with any after-proceedings which may be had where the question of privilege does not arise. The law simply declares to the witness that if his answers may tend to criminate him, he shall not be compelled to answer, that in making his determination, he must judge for himself, but that in so doing he acts at his peril. He must not expect so extraordinary a protection to be afforded him, without some corresponding protection to the rest of the community. If, therefore, it can afterward be proved on a direct issue made for that purpose, that he has willfully and falsely refused to testify, he shall be answerable for the consequences. It is supposed in the argument that the privilege exists, not only in a case where an occasion for its exercise arises, but in one also where no such occasion can possibly occur. For it is of the essence of the privilege that it only exists where the person concerned occupies the position of a witness and not that of a party. The inquiry, and the purpose for which the inquiry is made, are entirely different in the two cases. In the first, it is not established as a fact that the witness told the truth when he refused to testify, whereas the action against the witness is brought for the very purpose of ascertaining that fact. Because on one occasion a witness is excused from testifying, it does not, therefore, follow that on another and a totally different occasion the truth and reasonableness of the excuse should be taken for granted. As a witness he is protected because his answers might criminate him; but the object of the suit instituted against him may be to prove that he is innocent, and not guilty of any offense. It could hardly be contended that if a witness were to confess that he had been guilty of perjury in refusing to testify, his confession would not be proper evidence against him. And if it could not, then the argument advanced 3é3] for the purpose of showing that in no instance *can a suit be instituted against him, falls to the ground, for Confessions are only one species of evidence to establish a fact sought to be proved. The refusal of a witness to testify, therefore, if it is will *344 ful and false, seems to me to stand upon the same ground, as every other species of misconduct of one person which produces an injury to another. He who undertakes to prove that an answer to a question put to a witness-can not possibly criminate him, has, to be sure, a very difficult task to perform. The difficulty, indeed, is all on that side, for not only is a witness excused from answering, where the effect would be to involve him in guilt, he is excused where his answers would furnish one essential link in a chain of testimony conducing to the same end.
The result is, that the court of common pleas erred in rejecting the testimony which was offered to prove what were the questions proposed to the defendant, and that any answers to the same could not possibly criminate him. Judgment reversed.