Speak, C. J.
At the outset we meet the question whether or not the Bank has any standing in court to maintain this suit, the contention of the plaintiff in error being that the Buffington mortgage was nec *179 essarily foreclosed by the suit brought by Wood-head upon the Dickinson mortgage, a prior incumbrance. If this is so then clearly the Bank has no standing and can be afforded no relief as regards the plaintiff in error.
It will be observed that the circuit court does not attempt to determine whether or not Buffington was a party to the Woodhead suit. Its findings are of evidentiary facts appearing of record in the proceedings of the court of common pleas in that suit, but it nowhere determines the ultimate fact. The common pleas record finds with distinctness, and by repetition which is almost suspicious, that Buffing-ton had become a party to the case. As against this plain finding we are not at liberty to indulge in surmises, but must accept the finding of the common pleas as conclusive of the fact that Buffington, mortgagee, was a party to that foreclosure suit, and it follows that he could, have no standing now to dispute the conclusive effect of that adjudication. The question then is, does the Bank stand in any better position, being the owner of the Buffington note and mortgage at the time that suit was commenced and determined, its assignment however not being upon record, and neither the parties to the suit, nor the purchaser, having any knowledge or notice of the transfer by Buffington to the Bank. The Bank’s claim rests upon the proposition that it is necessary in all cases, in order to adjudicate finally the rights of all parties to title to real estate, that the real parties in interest, and all of them, be brought before the court, and that, inasmuch as a-t the time of the commencement of the Woodhead suit, and afterward, the Bank was the lawful assignee of the Buffington note and mortgage, it was a necessary party, *180 and not being made a party its rights are not affected by. the judgment. The proposition rests for authority upon Holliger v. Bates, 43 Ohio St., 437, decided by this court at the January term, 1885. It is there held that where a senior mortgagee forecloses his mortgage and sells the property without making a junior mortgagee a party, or giving him notice, the purchaser acquires his title subject to the right of redemption by the junior mortgagee, and the same rule applies where the junior mortgagee has assigned all his interest in the mortgage and the note secured by it to a third person who is not a party and is without notice of such proceedings and sale; that the latter may foreclose and sell, and the fact that he did not take a written assignment of the mortgage and have it recorded does not defeat the mortgage, nor estop, him from foreclosing.' It is probable that the judgment of the circuit court was based upon that decision. Upon full consideration, however, we are satisfied that this case does not rule the case at bar. A number of points of distinction as to the facts may. be noted. The notes secured by the mortgage in that case were not due at the time of the sale, which fact is specially emphasized by the learned judge who reported the case; in the case at bar the note was due. Another distinction is that in the former case the owner of the notes secured by the second mortgage was a bona fide purchaser before maturity and for value; in this case the note and mortgage were transferred to the Bank as collateral security for a preexisting debt, thus leaving the Bank to have recourse upon Buffington, its assignee. A further distinction is that the purchaser in the former case at judicial sale remained the owner until the action to foreclose the second mortgage was commenced, while in the *181 case at bar the title had passed to successive purchasers, all of whom purchased after the entry was made on the mortgage record by the clerk showing that the Buffington mortgage had been satisfied by foreclosure and sale. In the former case the purchaser could be made whole by being subrogated to the rights of the lienholders to the extent of the purchase price paid by him, while in this case at bar Pinney would be limited in his right of subrogation to such right as was vested in Francisco, without reference to the amount he himself paid as purchaser. It is not to be forgotten, also, that in this case the Bank had knowledge within a few weeks after Francisco purchased, of the proceeding and sale, and yet it kept still and made no demand for over five years, knowing, or having the means of knowing, that Francisco, the purchaser, was in possession, and that extensive and valuable improvements were being made and that innocent purchasers were buying property on the faith that the proceedings and sale insured a good title. While it is probable that it was too late , then to overturn the judgment and sale, it was not too late to advise the purchasers of its claim and thus arrest the expenditure of raoney in improvements and in the payment of purchase money, and good faith required that it should speak out.
But a more vital distinction arises from the change in the statute law. At the time of the Holliger v. Bates decision there was no provision of statute which authorized the entering of an assignment of a mortgage in the mortgage record in the recorder’s office, and what legal effect would have been given to such entry had such been made we need not here discuss. But the amendment to. section 4135, Be- *182 vised Statutes, of April 16, 1888 (85 O. L., 284), permits such assignment to be entered on the record direct, or recorded where such assignment is on the mortgage itself, and making it the duty of the recorder, where a release is intended by the assignee, to record on the margin the assignment before entering the release. What is the scope and purpose of this legislation? We think it is in furtherance of the purpose expressed by this court in Coe v. Erb, 59 Ohio St., 259, where it is said that the recording acts “rest upon a recognition of the policy that there shall somewhere be found a record which will disclose the state of the title of all lands within the county. For conveyances, mortgages, leases, etc., resort is had to the office of the county recorder, ’ ’ etc. # * * “ The business public, therefore, has a high interest in the maintenance of such a system as will enable every person, by the ordinary inquiry, that is an examination of the records, to ascertain the condition of titles.”
The necessity and wisdom of such legislation is still more apparent when we consider the method pursued in obtaining loans by mortgage on land. In the great majority of cases it is now done through agents or brokers. The notes and mortgage are taken in the name of the agent. The notes he transfers by indorsement without recourse. On the mortgage he signs both the printed blank assignment and the printed blank release, and in this condition the papers are delivered to his customer. After this the securities may, and often do, pass from hand to hand, frequently being sent out of the state. In such cases when the mortgage is satisfied the blank release is filled up and it is then entered of record as the act of the mortgagee, the agent, the real *183 owner not appearing of record anywhere in the transaction. It results that it is exceedingly difficult, sometimes practically impossible, to ascertain the real owner of the claim. To put this burden on those who have other claims upon the land and especially upon those who have prior liens, is unreasonable, and to require them, in case of foreclosure, to ascertain at their peril the then owner of the junior claim is unjust as well as unreasonable. Much fairer is it to require that the assignee of the' mortgage, if he is not satisfied to rest upon the good faith of the assignor, to put his assignment upon the record so that the world can see, and this we believe is the purpose and the proper construction of. the amendment of April 16, 1888. Such construction is in furtherance of the purpose indicated in the citation from Coe v. Erb, supra, and entáils no. serious hardship upon anyone. It is but the application'of an equitable principle that where one of two innocent parties must suffer the loss should fall upon him who has, by his negligence, permitted one to repose confidence in a public record which fails to speak the whole truth.
Our conclusion finds support, we think, in the case of Swartz v. Leist, 13 Ohio St., 419. It is there held that “where the mortgagee, retaining the legal interest in the mortgage, subsequently enters satisfaction and a discharge upon the record of the mortgage, such discharge operates to cancel the record of the mortgage, as against subsequent purchasers and mortgagees in good faith, and without notice; and as against them, the assignee of the note can not assert his equitable lien. ” It is true that the statute authorizing the entry of a release upon the mortgage record more fully expresses the purpose of the *184 legislature with, respect to the effect of such entry than is expressed by the clause which applies to an assignment of the mortgage, but the purpose is the same; it is to secure.a record which will apprise all interested of the real condition of the title with respect to incumbrances. In the case above cited the holder of the note (Swartz) negligently permitted the mortgagee (Little) to, retain the legal title and omitted to indicate upon the record the fact of his equitable title, thus leaving the latter the power of control over it. Leist, the purchaser, having no reason to suspect fraud, was held to be justified in relying upon the record as speaking the truth, and therefore in regarding the release as legally made; so in the case at bar, the Bank had the right under the statute, to have its assignment entered of record,' which would have been notice of its equitable rights under the assignment to other mortgagees and subsequent purchasers. The means were thus at its hand to protect its own interest and to prevent others from being misled. Ordinary diligence required this. But it negligently permitted the record to indicate that Buffington remained the owner of the claim, and parties interested innocently relied upon that record. We think that the statute justifies,. and that fair dealing requires, the rule that where the recording act authorizes the assignment of mortgages to be recorded, and the assignment is duly entered of record, such record shall be held to be notice to mortgagees and subsequent purchasers, but wh^re such assignment is not so entered, mortgagees and subsequent purchasers in the absence of noticeA>therwise are justified in relying upon the record as they find it and in acting accordingly. As in the Swartz case that party was left to bear the *185 loss, so in this case the Bank should be held to bear the loss. Childs v. Childs, 10 Ohio St., 339, and Stewart v. Johnson, 30 Ohio St., 24, are cited. Neither case touches the question we have here.
The circuit court committed no error in its judgment as to John D. Lamb.
Respecting the controversy affecting the plaintiff in error, the conclusion hereinbefore indicated renders it unnecessary for us to discuss the claims as to expenditures for improvements and taxes, and the matter of rents and profits. Plaintiff in error is entitled not only to a judgment of reversal but to a final judgment quieting his title against the Bank, and dismissing the petition of the Bank, and for costs, and judgment will be so entered accordingly.

Judgment reversed and judgment for plaintiff in error.

Davis, Shauck, Price, Crew and Summers, JJ., concur.