The Bank of the United States, Appellants, *vs.* George W. Peter and others, Appellees.

It is a well settled principle in equity, that a judgment creditor, where he is compelled to pay off prior encumbrances on land to obtain the benefit of his judgment, may, by assignment, secure to himself the rights of the encumbrances; and the same, rule applies, where a junior mortgagee is obliged to satisfy prior mortgages. He stands as the assignee of such mortgages, and may claim all the benefits under the lien that could have been claimed by his assignor. But the effects of this principle may be controlled by acts of the parties.

ON appeal from the Circuit Court of the United States for the county of Washington in the District of Columbia.

This case was argued by Mr. Sergeant and Coxe, for the appellants, and by Mr. Key, for the appellees.

Mr. Justice M'Lean delivered the opinion of the Court.—
This is an appeal from the decree of the Circuit Court, for the District of Columbia.

The facts out of which the controversy arises are substantially as follows:

At April term, 1822, the Union Bank, of Georgetown, recovered two judgments against George Peter, amounting, exclusive of costs, to the sum of seven thousand nine hundred and thirty-four dollars.

On the 9th April, 1824, George Peter executed a deed of trust to Thomas Peter and Robert P. Dunlop, which was supposed, at the time, to include all the real property owned by George Peter within the District of Columbia. The conveyance was made in trust, to indemnify Thomas Peter, who had become the endorser of George to a large amount. A great number of debts were enumerated in the deed, and among others, one to the Bank of the United States of twelve thousand dollars; which were designed to be paid in whole or in part, by the sale of the property included in the deed of trust.

The judgments of the Union Bank, above stated, were not embraced by the deed of trust.

Before any act was done under this deed, Dunlop relinquished the trust to Thomas Peter, his co-trustee.

On the 19th May, 1824, the Bank of the United States recovered a judgment of five thousand dollars against George Peter, as endorser or drawer with John Peter.

In September, 1829, the property conveyed in trust was sold, by Richard Smith, cashier of the branch Bank of the United States; who had been appointed by Thomas Peter, with the consent of the creditors, to act as agent in the premises. The nett proceeds of the sale, deducting certain charges, were $37,285 90, an amount insufficient to discharge all the debts.

The judgments of the Union Bank, though not included in the

deed of trust, constituted a lien on all the real property of George Peter in the district; and in order to give unencumbered titles to purchasers at the above sale, Richard Smith, with the consent of the creditors and Thomas Peter, paid those judgments out of the proceeds of the sale; but satisfaction was not entered upon the record. The payment was stated to be for the use of the Bank of the United States; and writs of scire facias have been brought to revive the judgments.

It having been discovered that the trust deed of the 9th April, 1824, did not include all the property of George Peter within the district; on the 1st October, 1829, he executed another deed of trust to Thomas Peter; for ten lots in the city of Washington, which were required to be sold, and the proceeds applied in paying certain judgments against George Peter as drawer, and Thomas Peter as endorser. One of the judgments specified was obtained by the Bank of the United States. And on 7th May, 1830, another deed of trust was executed by George Peter to Thomas Peter, including the above ten lots and one other lot in the city of Washington. This deed was designed to remedy some defect or informality in the first deed for the ten lots, and to convey one other lot; the same judgments are recited as in the first deed, and the same trust declared.

These eleven lots were sold by Richard Smith, in October, 1829, and May, 1830, for $5280 70.

In 1834, Thomas Peter died, and this proceeding is carried on by his executors; who, with George Peter, filed their bill stating the above facts, and praying that Richard Smith and the Bank of the United States be decreed to pay over the proceeds of the sale of the eleven lots, in their possession, to the creditors named in the trust deed of 9th April, 1824. This application is made on the ground that as the judgments of the Union Bank were a lien upon the eleven lots, and were paid out of the trust funds, the trustee, in behalf of the creditors and himself, has a right, in equity, to the proceeds of the sale of these lots, under the lien of the judgments.

This claim is resisted by the Bank of the United States, on the ground that the judgment obtained by the bank for $5000, in May, 1824, long before the execution of the deed of trust for these lots, constituted a lien upon them, after the discharge of the judgments of the Union Bank. There were other judgments against George Peter, rendered in May, 1824, which were not provided for in the trust deed of April, 1824, and which claim a proportionate interest with the Bank of the United States, in the lien on the eleven lots. This claim is not resisted by the Bank of the United States, which claims out of the proceeds of the sale of the eleven lots, as its dividend, the sum of $2428 62.

And the question in this controversy is, whether the proceeds of the sale of the eleven lots shall be paid to the creditors named in the deed of trust of the 9th April, 1824: to the Bank of the United

States, on their judgment, and on the other judgments of May, 1824, under which the lien is set up; or to the creditors named in the trust deeds of these lots of 1829 and 1830.

Although the bill in this case, in its specific prayer, does not extend beyond an application of this fund under the first deed of trust; yet there are certain agreements and admissions on the record, which authorize the Court to make a final decision in the case.

It seems that a satisfaction has not been entered on the judgments of the Union Bank, although they have been paid in full. The entry that this payment was made for the use of the Bank of the United States, can have no effect favourable to the Bank, on the present question. Under the trust deed, the Bank of the United States had but a common interest with the other creditors named, in discharging or controlling the lien of these judgments. And it is on the discharge of this encumbrance by the trustee, out of the trust fund, that he sets up the right in equity, in behalf of himself and the creditors named in the deed, to be subrogated to all the rights of the Union Bank as plaintiffs in the judgments.

It is a well settled principle in equity, where a judgment creditor, who is compelled to pay off prior encumbrances on land to obtain the benefit of his judgment, may, by assignment, secure to himself the rights of the encumbrances. And the same rule applies where a junior mortgagee, to save his lien, is obliged to satisfy prior mortgages on the same estate. He stands as the assignee of such mortgages, and may claim all the benefits under the lien that could have been claimed by his assignor.

But the effect of this principle is controlled in the present case, by the subsequent acts of the parties.

If the lien of the judgments of the Union Bank had been unconditionally extinguished, the lien of the judgment of the Bank of the United States, and the other judgments of the same date, would have attached to the eleven lots; but this effect has also been controlled by the acts of the parties.

The judgments of the Union Bank were not paid until January, 1830. So that prior to this time, on no principle could the lien of these judgments be held to be extinguished. And before this time the trust deed was executed.

This deed was executed on the 1st October, 1829, and it contains the following recital: "Whereas, the said George Peter is indebted to the president, directors, and company of the Bank of the United States; to the president and directors of the Union Bank of Georgetown; and to the president and directors of the Farmers' and Mechanics' Bank of Georgetown, in divers large sums of money, for which the said George Peter gave his several promissory notes, payable to the said Thomas Peter, and by him endorsed to the said banks, upon which notes, judgments have been obtained," &c. And the lots are conveyed to Thomas Peter in trust for the payment of the above judgments; and were sold in October, 1829, and May, 1830, by Richard Smith, agent for the trustee and the creditors named in the

L 2

deed. He was cashier of the branch Bank of the United States, at Washington, and represented the interests of the bank in the proceeding.

From these facts it appears, that before the judgments of the Union Bank were satisfied, and consequently before there was any pretence that the lien of these judgments on these lots was extinguished, with the consent and approbation of all the parties interested, the deed of the 1st October, 1829, was executed. That this arrangement was made with the approbation of the Bank of the United States, is clear from the face of the deed, and the agency of Smith in selling the property.

Except by virtue of the trust deed, Smith had no right to sell the property; and acting as he did for the creditors named in the deed, among which the Bank of the United States was prominent, it is too late for the bank, after the sale, to disavow his agency.

The contingent lien of the bank on the eleven lots, by virtue of its judgment, in May 1824, does not seem to have been considered by the bank or the trustee, when the trust deed was executed as of any value. It depended entirely on the unconditional extinguishment of the lien under the judgments of the Union Bank.

It is contended, that as the judgments of the Union Bank were a lien upon all the real estate of George Peter in the district, that the Court would have directed executions on these judgments to be levied on the property of Peter, other than the eleven lots; so as to have left them to be sold under the judgment of the Bank of the United States. And that the same rule should now prevail.

The answer to this is, that before the judgment of the Bank of the United States was rendered, the first deed of trust was executed, which embraced all the property of Peter in the district, except the eleven lots. That this deed was valid, and that the rule would have been applied as between the lien of the Union Bank and the grantee of the first deed of trust, but not as to subsequent liens.

Here are the judgment lien and the trust deed, covering the same property, except the eleven lots, which are covered by the judgments, but not by the deed. The judgment of the Bank of the United States created no lien. Under such circumstances, the Court, could not have postponed either the lien of the Union Bank or the rights under the deed of trust, in behalf of the judgment of the Bank of the United States; but would have directed that the eleven lots should be sold, under the judgments of the Union Bank.

This would have been the correct rule under these conflicting rights; but the case turns on the deeds of trust of 1829 and 1830, which conveyed the title, subject only to the prior lien of the judgments of the Union Bank. And this was done with the consent of the agent of the Bank of the United States. We think this consent, as shown in the deeds, and the sale of the eleven lots, connected with the facts of the case, goes to establish the trust deeds; and that the proceeds of the sale of these lots must be paid over on the judgments specified in the deeds according to their respective priorities.

As the decree of the Circuit Court is not in accordance with this view of the case, it must be reversed; and the case sent down for further proceedings.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is adjudged and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed; and this cause be remanded to the said Circuit Court for further proceedings to be had therein in conformity to the opinion of this Court.