## Goodrich *v.* Friedersdorff and Others.

Sheriff's Sale.—Redemption.—A purchased certain real estate upon a decree of foreclosure in his favor against B, and received from the sheriff a certificate of purchase, under an agreement that B might redeem within a year. C, during the year, purchased of B the equity of redemption, and instituted proceedings against A to enforce his right to redeem. The issue was found in favor of C, and a decree was entered that the sheriff convey the lands to C. Afterwards, certain judgment creditors of B, whose judgments were liens on the equity of redemption, instituted proceedings to enforce the lien of their judgments.

*Held,* that the rights of the judgment creditors, who were not parties to the suit instituted by C against A to enforce his right to redeem, could not be affected by the novel decree rendered in that case, and as to them the case stands as if A had voluntarily submitted to the redemption.

*Held,* also, that the judgment creditors were entitled to enforce the lien of their judgments against the lands, subject to the lien of C for the amount paid by him to redeem A's judgment.

*Held,* also, that evidence of the value of improvements made by C upon the land was not admissible, but evidence of the amount of taxes paid by him after redemption was admissible.

Verdict.—*Semble,* that a general verdict for the plaintiff in such a case, without some special findings, would not enable the court to pronounce a proper judgment.

Burden of the Issue.—When, under the pleadings, no proof is required to enable the plaintiff to recover, the burden of the issue is upon the defendant, and he is entitled to open and close.

APPEAL from the *Jefferson* Circuit Court.

Frazer, J.—The complaint was by *Friedersdorff,* a judgment creditor of *Marsh,* against *Marsh* and *Goodrich,* and divers judgment creditors of *Marsh.* The object of it was to subject certain real estate, the legal title to which was in *Goodrich,* to execution to satisfy the plaintiff's judgment. The judgment creditors who were made defendants, by their pleadings, made themselves co-plaintiffs with *Friedersdorff,* seeking the same relief.

Having alleged the obtaining of the plaintiff's judgment on the 16th of *October,* 1861, the return of an execution *nulla bona,* and the insolvency of *Marsh,* the material facts of the complaint are, that on the 16th of *December,* 1857,

*Marsh* had mortgaged the lands in question to one *Pogue,* to secure the latter as his accommodation indorser; that on the 9th of *September,* 1861, *Pogue* commenced a suit to foreclose his mortgage, obtained a decree for $6,198 10, on the 10th of *October* of the same year, and on the 7th of the following *December* became the purchaser of the lands at a sheriff's sale under the decree, for $2,500. It was alleged that the actual indebtedness to *Pogue* secured by the mortgage, and unpaid at the date of his decree, was only about $1,800, and that *Pogue* at the time of his purchase believed that the lands were subject to redemption from the sheriff's sale, under the act of *June* 4th, 1861, and accordingly took from the sheriff a certificate of purchase, such as that act authorizes, and *Marsh* held possession of the land for a year thereafter; that the only amount due *Pogue* was upon payments made upon indorsed paper of *Marsh,* given after the taking effect of the redemption act of *June* 4, 1861, which was given, however, in renewal of paper mentioned in the mortgage; that *Pogue* assigned his certificate of purchase, for value, to one *Weyer,* on the first day of *February,* 1862, guaranteeing to *Weyer* that the judgment and sale by the sheriff were valid; that *Weyer,* at the expiration of a year from the date of the sheriff's sale, demanded a deed from the sheriff, who refused to make such deed, upon the ground that *Goodrich* claimed the land, and to have redeemed it from the sheriff's sale; that on the 9th of *December,* 1862, *Weyer* brought suit to compel the sheriff to convey to him, making *Goodrich* and *Marsh* defendants to his complaint; that *Goodrich* appeared to that suit, and filed a cross-complaint, wherein he alleged that he was the assignee of the judgment of *Friedersdorff,* and that *Pogue* had made his purchase at sheriff's sale upon an agreement with *Marsh* to permit the latter, or any one claiming under him, to redeem within a year by paying $2,750, whereby *Marsh* was induced to forego the privilege of staying the judgment, and to relax exertions to raise money to discharge the same, and to procure bidders, &c., of all which *Weyer* had

notice; that he, *Goodrich*, had purchased of *Marsh*, within the year, the right or equity of redemption, in consideration of an agreement by him to pay the redemption money, and of his purchasing of *Marsh's* wife, for $2,000, her contingent interest in the land; that he had tendered *Weyer* $2,750 to redeem. It was further alleged by *Friedersdorff*, that upon the trial of the case of *Weyer* v. *Goodrich*, the allegations of *Goodrich's* cross-complaint were found to be true, and that he obtained a decree settling the title to the lands in him, and requiring the sheriff to execute to him a deed therefor. It was also alleged that *Goodrich*, on the 6th of *December*, 1862, procured the plaintiff to assign his judgment to him, "to use in acquiring title to the mortgaged lands, promising to pay $300 therefor, on condition that he could so use it; that in *May*, 1863, he represented to the plaintiff that he could not, and did not, so use the judgment, and could not, and did not, redeem under it, by which representations he induced the plaintiff to take a re-assignment thereof; that the agreement of *Pogue* with *Marsh* to permit the redemption was in parol, but that the same was recited in the written conveyance of the equity of redemption from *Marsh* to *Goodrich;* that *Goodrich's* attorney, pending the cause of *Weyer* v. *Goodrich*, had notice of said agreement, and that satisfaction was entered of the *Pogue* judgment; that the balance of the $2,750 received for the redemption of the lands, after paying *Pogue* the $1,800 really due him, was applied in paying for the services of *Goodrich's* attorney in that cause, and to discharge other debts of *Marsh* for which *Pogue* was liable, but not secured by the mortgage to him; that *Goodrich*, having tendered to *Weyer* the redemption money, afterwards, on the same day, paid the same into the clerk's office to effect a redemption of the land, claiming to redeem as a judgment creditor, by virtue of the plaintiff's judgment assigned to him; that neither *Marsh* nor *Pogue*, at any time before the sheriff's sale to *Pogue*, made known the amount actually due *Pogue* on the mortgage, and the plaintiff had no notice of the

true amount thereof, until after the time for redemption had expired, and that the sheriff's certificate was only given because of the belief that the lands were by law subject to redemption; that the assignment from *Marsh* to *Goodrich* was without valuable consideration, and that *Goodrich* holds in trust for *Marsh*. A demurrer by *Goodrich* to the complaint was overruled, and this ruling is assigned for error.

It is conceded upon both sides that *Marsh* had the right to redeem the lands from *Pogue's* purchase, at any time within one year from the date of that purchase. Upon the basis of that right, *Goodrich* procured his title by solemn judgment of the *Jefferson* Circuit Court, though it does not escape notice that the mode adopted by that court to give him the relief which he claimed to be entitled to, in consequence of having acquired the right to redeem, was rather novel. To redeem as assignee of *Marsh* would be to avoid the consequence of the sheriff's sale, the conveyance by the sheriff of a title under that sale; but the court directed that very conveyance to be made. To the parties then before the court, no wrong could result by the proceeding, and as the parties here seeking relief were not parties to that record, they cannot be affected by it. As to them, *Goodrich* must be held to be merely in the position which he had a right to occupy in view of the facts. He must, as against the appellees, be deemed to stand exactly as he would if *Weyer* had voluntarily received the redemption money and canceled the sheriff's certificate of purchase. It was not in the power of the Circuit Court, by its decree in the case of *Weyer* v. *Goodrich*, to cut off the rights of judgment creditors of *Marsh*, who had no opportunity to be heard. They can yet assert the actual truth and obtain such relief as they are entitled to under it. It is not true, assuming the verity of the complaint, that there was no redemption from the sheriff's sale. There was such redemption, in fact, before the expiration of the time limited therefor, and these creditors may now claim whatever benefit shall accrue to them in consequence of it, notwithstand-

ing the peculiar form of a decree to which they were not parties. This proposition is elementary, and does not require that authorities shall be cited in its support. The case, then, as made by the complaint, may be briefly stated as follows: *Goodrich,* a purchaser from *Marsh,* redeemed from the sheriff's sale, made in pursuance of *Pogue's* decree of foreclosure. The appellees hold judgments, which were liens on the equity of redemption held by *Marsh;* and the question presented by the demurrer is, whether such judgment creditors can, after such redemption, reach the land for the purpose of satisfying their claims out of whatever money may be realized upon its sale, after first paying to *Goodrich* the amount advanced by him to redeem, with interest. Thus stated, the question is a very plain one, and it seems to us can only be answered in the affirmative. We think, therefore, that the demurrer to the complaint was correctly overruled.

The answer of *Goodrich* was in two paragraphs. The first is of great and unnecessary prolixity. It repeats many of the averments of the complaint, and attempts to give a narrative of the whole transaction. The material new matter which it introduces into the record is, that *Pogue's* decree was entered for too much, by mistake of his attorney, but that the judgment creditors were, before sale, notified of the amount actually due, viz., $2,500; that *Pogue* bid off the property upon an agreement to allow *Marsh* and his assignees to redeem within one year, for $2,750; that the act of *June* 4, 1861, did not influence the parties or the sheriff; that the indebtedness to *Pogue* had accrued before the passage of that act; that in consideration of *Marsh's* assignment to *Goodrich* of his equity and right of redemption, the latter paid $2,500 to the wife of *Marsh,* "to extinguish her contingent right of dower," and received from her a deed of quit-claim; also that he paid $211 to redeem the lands from a sale for taxes; also that he paid *Weyer* to redeem $2,750; that he also paid $500 to one *Harrington,* for the benefit of *Marsh;* that *Goodrich* has made lasting

improvements on the lands, of the value of $1,500, and has paid $400 for taxes; that he did not use the plaintiff's judgment in redeeming; that *Marsh* had, during the year, ineffectually requested the plaintiff, as a creditor, to redeem from *Pogue's* purchase, informing him of the nature of the agreement with *Pogue*. It is denied that any execution had, before the commencement of the suit, been issued upon the plaintiff's judgment and returned "*nulla bona.*"

The second paragraph differs from the first only in asking that his advances for redemption, taxes and improvements, and to *Marsh* and wife, be declared a lien on the lands, and to have priority over the judgments sought to be enforced against it.

The reply was: 1. The general denial. 2. That *Goodrich* redeemed the premises from the sheriff's sale to *Pogue*, and is thereby estopped from claiming title through that sale. 3. As to *Goodrich's* claim for advances to Mrs. *Marsh* for her contingent right, that she is dead; and as to taxes and improvements, that he has taken the profits since 1863, worth $800, and has cut down, removed and sold, timber trees growing thereon, of the value of $2,000, which exceeds all moneys advanced, improvements, &c.

There was a jury trial, which resulted in a general verdict for the plaintiff, with answers to special interrogatories, to-wit: that *Goodrich* redeemed from the sale to *Pogue* under a special contract between *Pogue* and *Marsh*, and that no part of the amount due *Pogue* at the date of his judgment of foreclosure had accrued upon a contract made subsequent to *June* 4, 1861. A motion for a new trial was overruled, and a decree entered directing the sale of the property to satisfy the judgments of the appellees, in their order, subject to a lien in favor of the appellant for $2,750, the money paid by him to redeem from the sheriff's sale to *Pogue*, with interest upon that sum from the date of its payment.

A number of questions arise out of the refusal to grant a new trial.

*Goodrich* was refused the right to begin. The answer traverses no material allegation of the complaint which was essential to the plaintiff's recovery, and no proof was therefore necessary, upon the pleadings, to entitle the plaintiff to recover. 2 G. & H., § 74, p. 100. The jury was so instructed, and, we think, correctly. In such a state of the case, the defendant has the right to begin. *Judah* v. *The Trustees of Vincennes University*, 23 Ind. 272. It was wholly immaterial whether the redemption from the sheriff's sale was accomplished in virtue of the statute, or under a contract. The fact of redemption was important, not how or wherefore it became a fact. Of the answer, it may be further remarked that the first paragraph was of no consequence whatever, as, in our view, it did not amount to a bar, though pleaded as such. The second was in the nature of a counter-claim, seeking to secure protection to *Goodrich's* equities, and being denied by the reply, he had the burden of the issue.

The appellants offered evidence on the trial to prove that *Marsh* had, during the year succeeding the sheriff's sale to *Pogue*, informed each of the appellees of his agreement for redemption with *Pogue*, and requested each of them, as judgment creditors, to redeem; which they declined to do. This evidence was excluded, and, we think, correctly. According to the view of the case already expressed, the proposed evidence would have been entirely immaterial.

The appellant also offered to prove the value of improvements made by him, and that he made them believing in good faith that he had a good title. This evidence was, we think, properly excluded. We know of no authority for entering into the investigation of the value of improvements in a case like this; none is cited, and we think that none can be found.

The court refused to permit the appellant to prove the amount of taxes paid by him upon the lands after he had redeemed. We are of opinion that this was error. The appellees do not question that *Goodrich* was entitled to suc-

ceed to the rights of *Pogue*, in consequence of having re-deemed, and that he is therefore entitled to a lien for the money advanced to effect the redemption. But the taxes paid constitute a paramount lien, and their payment was necessary to protect him, and inured also to the benefit of the judgment creditors who seek now to enforce their liens, subject to *Goodrich's.* It seems to us that, under the circumstances, equity clearly requires that the money so paid by him for taxes shall also be regarded as a lien in his favor, having priority over the judgments. The circumstances justify the application of the equitable doctrine of substitution, whereby *Goodrich*, for the taxes paid, is remitted to the lien by which the property was held for their payment. *Sanford* v. *McLean*, 3 Paige 117; *Bank of the United States* v. *Peter*, 13 Peters 123.

There were twenty-four causes assigned for a new trial, one of which was the refusal to give each of thirty instructions to the jury, and therefore involves as many propositions. We cannot be expected to notice each of these matters in detail, and we forbear any further remark, inasmuch as the points involved, so far as they are important, are fully determined by what has already been said.

A motion by *Goodrich* for judgment in his favor upon the verdict was, we think, correctly overruled. We have seen that the facts found in his favor were wholly immaterial.

It is possible that a general verdict, in the ordinary form, if for the plaintiffs, may not enable the court to render the proper decree upon another hearing. This is one of the consequences resulting from the anomaly of trying such a case by jury. This difficulty can only be avoided by requiring some matters to be specially found.

The pleadings on both sides require amendment to avoid confusion and unnecessary costs. The record is inexcusably incumbered with unnecessary and redundant matter, and the pleadings are extended greatly by needless details of evidence, and by repetitions. This is so marked that we

cannot avoid some expression of disapprobation. We shall direct, therefore, that the parties have liberty to amend their pleadings. A new trial is also directed.

Judgment accordingly.

RAY, C. J., concurred in the judgment, but doubted the reasoning.

*H. W. Harrington* and *C. A. Korbly*, for appellant.
*C. E. Walker* and *A. D. Matthews*, for appellees.