## Miller v. Finn.

1. REMOVAL OF CAUSES TO FEDERAL COURT. The acts of congress do not authorize the removal of causes from State to federal courts, on the ground of prejudice or local influence, unless

1st. The application for removal be made before the trial or final hearing in the State court of original jurisdiction; and

2d. The affidavit of prejudice or local influence be made by the party in person.

3d. The application, when made by one of several defendants, must be made in a cause which may be effectually proceeded in against one defendant separately from the other.

2. EQUITY OF REDEMPTION: *Interest of execution purchaser.* A purchaser at execution sale of an equity of redemption against whom a decree of foreclosure and sale has been entered, for a sum greatly in excess of what the premises afterwards bring on the sale, who has consented to the decree and withdrawn his appeal therefrom, has no interest in the premises and can convey none.

3. FRAUD IN MORTGAGE AND IN FORECLOSURE THEREOF. A mortgage to secure a sum certain, and future advances duly recorded, and by regular proceedings foreclosed, is not fraudulent as to creditors.

4. ——. Strong positive proof of fraud is required to avoid the recitals and findings in a decree of a court of general jurisdiction.

5. PARTIES: *Bringing them in by notice.* An affidavit for publication of notice of pendency of suit alleged that the action was brought for the foreclosure of a mortgage, and that the defendants were non-residents of the State, without alleging that they could not be served with process in the State; the notice was published four weeks next after June 16, 1860, and required the answer on the 30th of July, 1860; *held,* the notice was sufficient, and a decree rendered thereon concluded the defendant.

6. ——: *Appearance.* A party whose agent, not an attorney of the court, has entered his appearance, and who has answered a cross-bill filed in the cause against him and the plaintiff in the original bill, affirms the appearance and becomes a party in the principal suit.

7. ——: *Partners.* The omission of one partner as a co-defendant in an action in respect of partnership property, can, at the common law, only be taken advantage of by plea in abatement duly verified.

8. ——: Impleading parties in a bill as "Pomeroy & Benton," and publishing notice of pendency of the suit addressed in that form, is sufficient to

MILLER v. FINN.

bring before the court the members of a firm doing business under the style of Pomeroy, Benton and Company, composed of Pomeroy, Benton and Chase.

9. ——: Incumbrancers not made parties to foreclosure bill, are not affected by decree.

10. EXECUTION TITLE : *Caveat emptor* applies with all its force to a purchaser of real estate on execution.

11. ——: D. had judgment against B. in 1858, took out execution under which real estate was sold on the 24th of October, 1859. The sheriff's deed to the purchaser expressed the conveyance of B.'s interest on the 24th day of October. P. had a judgment against B. which, on the 16th day of October, 1859, became a lien on the premises. Afterward he took out execution and sold the same premises, *held*, that the purchaser took no title.

12. ——: A creditor had judgment in 1859, took out execution, but at what time did not appear; took out an alias in 1862, *held*, that his lien was postponed to those of intermediate judgments.

13. ALLEGATA ET PROBATA : The plaintiff in a bill in chancery cannot go to the answer for facts which, by his bill, he did not put in issue.

14. MERGER : There can be no merger unless a greater and a less estate meet in the same person holding in the same right.

15. ——: Nor where intervening rights or estates interfere nor where the interests of the party in whom the estates meet so require.

16. ——: Nor where the intention to keep the estates distinct, may be inferred or has been expressed.

17. REDEMPTION : *A subsequent incumbrancer* has a right to redeem the senior lien, on paying the amount thereof, by an assignment thereof, but not to take the possession.

18. ——: *A judgment creditor* not a party to a foreclosure suit, is entitled to pay the mortgage debt, and have an assignment of a mortgage senior to his lien until the decree.

19. ——: *After a decree of foreclosure*, such a party may be permitted to redeem the mortgage, or may be compelled to receive the amount of his judgment, as the court in its discretion shall think just between the parties.

This is an appeal from a decree, rendered by Mr. Justice Crounse, sitting in the District Court for Douglas county.

MILLER *v.* FINN.

The bill was filed on the 21st day of August, 1865, in the District Court of the late Territory of Nebraska. It seeks to set aside as fraudulent and void as to creditors, a mortgage upon the premises in question, made by George Bridge to Charles Bridge, on the 17th day of October, 1857, or to redeem the said mortgage, if upon the hearing, it should appear to have been made *bona fide.*

The allegations in the bill are as follows :

1. At a term of the District Court of Douglas county, prior to the term of October, 1859, George Pomeroy, William H. Benton and George H. Chase, who were partners under the firm name of Pomeroy, Benton and Company, commenced their certain civil action in said court, against George Bridge ; and at the said October term (the first day of which was October 16th), recovered a judgment therein, against him, for $685.60. On the 18th of September, 1863, the said plaintiffs sued out an execution, directed to the sheriff of Douglas county, which that officer levied on the west forty-four feet of lot five in block one hundred and twenty in Omaha ; and accordingly, on the 24th of October, in said year, sold the same to the plaintiff for $250. The sale having been duly confirmed by the court, and the sheriff directed to make a deed thereof to the purchaser, he, on the 10th of November, 1863, made the conveyance in due form to the complainant below and appellant here.

2. Other judgments against the said George Bridge, impleaded with George L. Miller and others, were recovered by divers parties and were assigned for value, to the complainant. The plaintiffs in said judgments, and the dates and amounts thereof, are as follows :

February 2, 1859, John Davis_____$2,147 41
October term, 1859, William Dean & Co _____ 354 94
March term, 1859, James Murray_____ 214 19

MILLER v. FINN.

October term, 1859, Milton Rogers_____$1,310 07
June term, 1860, Hadley D. Johnson_____ 1,805 92
October term, 1859, Charles Turner_____ 1,422 10
July term, 1861, Henry H. Vischer_____ 126 40

Amount of judgments held and alleged by the
    complainant :_____$7,383 03

3. On the 22d of October, 1857, and thence till the 24th day of October, 1859, the said George Bridge was seized of the premises in question in this suit, and the above mentioned judgments were and still are valid liens thereon.

4. At the October term, 1858, in said court, Dowdall, Markham and Company recovered against the said George Bridge and others, a judgment for $1,400 ; on the 12th of September, 1859, execution issued thereon which was levied on the said west forty-four feet of lot five in block one hundred and twenty, and in virtue thereof, the said premises were on the 24th day of October, 1859, sold to William H. Markham. A deed was duly made to him, conveying all right, title and interest which the said George Bridge had in said premises, at the said day of sale.

5. Other judgments were recovered against the same parties, who are made defendants to this bill, as follows :

October, 1858, William, Patrick & Co_____ $800 80
    "        "        "        "        _____ 800 50
March, 1859, Charless, Blow & Co_____ 658 45
June, 1860, Pundt & Koenig_____ 575 21
June, 1860, Leas & Harsh_____ 635 37
June, 1860, Eaton & Chambers_____ 1,058 99
June, 1860, William Y. Brown_____ 6,370 36
June, 1860, William E. Osman_____ 214 55

6. On the 22d day of October, 1857, George Bridge mortgaged the said premises to Charles Bridge, to secure

[S. C. N.]            17

two drafts of $2,500 each, and any other drafts which the said George should draw, and the said Charles should pay; and on the 19th day of May, 1860, the said Charles Bridge brought his suit in said court, to foreclose said mortgage. Of the incumbrancers above mentioned, John Davis, George Pomeroy, William H. Benton and George H. Chase, William Dean & Co., James Murray and Charless, Blow & Co., and George Bridge were not served with process in the action. Davis was not named as a defendant. Among the defendants named in the bill were parties who were styled "Pomeroy & Benton." As to William Dean & Co., the bill was dismissed. James Murray and Charless, Blow & Co., voluntarily appeared and answered. A paper was filed running thus: "I appear in this action and waive the issue and service of subpœna on me.

*Charles H. Hamilton*, for George Bridge."

Markham, the purchaser, on execution filed his cross-bill against George and Charles, alleging that the mortgage was made to hinder, delay and defraud the creditors of George, and he and Charles answered the same jointly.

An affidavit to procure publication of notice of pendency of the suit, addressed, among others, to "Pomeroy & Benton," ran thus: A. J. P., "being duly sworn, deposes and says, that this action is brought for the sale of real property under a mortgage executed by the defendant, George Bridge, to the complainant, and that the following named defendants are non-residents of this Territory, to wit: George Bridge, Dowdall, Markham & Co., George W. Thatcher, Judd & Leeds, William Dean, William, Patrick & Co., Charless, Blow & Co., and Pomeroy & Benton." Thereupon a notice was published, the first insertion being on the 16th of June, 1860, and continued thence four weeks; and by it the defendants were required to answer on the 30th day of July, following.

There was a firm doing business under the style of

MILLER *v.* FINN.

"Pomeroy & Benton," and also another doing business under the style of "Pomeroy, Benton & Co.," which latter was composed of Pomeroy, Benton and Chase, and who were the plaintiffs in the judgment above named. On the 26th day of November, 1861, a decree of foreclosure, with the usual directions, was rendered in and by the said court.

7. A proceeding having been instituted touching the rents of the said premises, to which the said Markham, Charles Bridge and George Bridge were parties, the same were, by the Supreme Court, awarded to George Bridge, who applied them to the payment of the costs and expenses of the said Charles Bridge, in foreclosing the said mortgage.

8. At the sale under the decree, the property was bid off in the name of Archibold T. Finn, by Charles W. Hamilton, acting as his agent, who also receipted to the master for the amount of his bid, as the agent of the said Charles Bridge; and in the course of the said proceedings, Hamilton acted at once as the agent of the said George Bridge, of the said Charles Bridge, and of the said Finn; and, since the sale, has collected the rents in the same manner as before the same. He also, acting as such agent, effected a compromise with Markham, who accordingly conveyed to Charles Bridge the premises which he had purchased at the execution sale. But no consideration for said premises was ever paid by or on behalf of said Finn, on account of said sale.

9. Considerable sums of money, belonging to the said George Bridge, came to the hands of the said Charles, out of which the drafts mentioned in the said mortgage were paid; yet the said Charles pretends that he paid them out of his private funds. George Bridge engaged in divers large and hazardous enterprises in Nebraska, in which he became insolvent; and on or about the 1st of July, 1864, he died intestate, leaving his brothers, Edward and Charles,

his heirs at law, him surviving. The said mortgage was made to defraud the creditors of the said George Bridge.

10. The defendant Finn has conveyed the west thirty-four feet of lot 7, in block 120, to Michael Murphy ; and the west forty-four feet of lot 5 in said block, to Myer Hellman.

On the 27th day of July, 1866, the defendant Finn filed his answer thereto.

He says he has no personal knowledge of the recovery of the several judgments alleged in the bill, nor of the issue of executions, nor of the other proceedings thereon ; and therefore denies the same. Of the execution sale upon the judgment recovered by George Pomeroy and others, he says it was secretly and clandestinely advertised and conducted ; that, at the time it took place, the judgment had been paid, satisfied and discharged by George L. Miller, one of the defendants therein, and was held by the complainant, who is the father of the said George L., in trust for him ; that the complainant never paid anything for the judgment, but the said George L. caused it to be assigned to him in order to keep it on foot against his co-defendants ; that the bid at the sale has never been paid, and that, at the time of the sale, the said Bridge had no interest in the property, but the same was the said Finn's property, free from all claims whatever ; and were worth $15,000 ; the order of confirmation was *ex parte*, and without notice to any person intrusted therein.

Of the assignments to the complainant of the several judgments alleged by him, the said Finn also says that the consideration for which the same were made was furnished by the said George L. Miller, and they are held in trust for him, in order that they may be asserted against the said Bridge, for his benefit ; whereas they have in fact been paid and discharged.

Of the sale upon the judgment recovered by Dowdall,

Markham & Company, he says that it was void, because not conducted according to law ; said Markham, did not, nor did any person authorized by him bid in the premises ; no moneys were paid on said bid, and said sale was made without the knowledge or consent of said Markham, or said Dowdall, Markham & Co. ; and the confirmation thereof was made without notice and *ex parte*, and in a secret and clandestine manner.

He admits the making of the mortgage by George Bridge to Charles Bridge, the filing of the bill for the foreclosure thereof, the recovery of the decree, the sale to himself of the mortgage premises, and the making of the deeds accordingly ; and alleges that all persons interested in the equity of redemption, were made parties to the bill ; and especially that the said Markham filed a cross-bill against the said George and Charles, which the said defendants therein duly answered, and which was determined along with the original bill.   He also alleges that he, by his agent Hamilton, paid to Charles Bridge the amount of his bid at said sale at the time it was made. . He also denies that Charles W. Hamilton has managed the property under the direction of the said George Bridge.

He says the interest of Markham was acquired by Charles Bridge upon the negotiation in that behalf of his exclusive agent, in order to relieve the title acquired by the mortgage foreclosure, of all shadow of claim, and that the consideration paid to said Markham, was his money.   He admits that in a suit brought by George Pomeroy and others against George Bridge, James G. Megeath was appointed receiver of the rents of the west forty-four feet of lot five in block one hundred and twenty, and that a considerable sum came to his hands ; but avers that his accounts in that behalf were duly settled by the court, and he discharged. He denies all knowledge of the proceedings between said Markham, George and Charles Bridge, touching the rents ;

and denies that any moneys adjudged therein to George, came directly to the hands of said Charles, and were applied to his use without accounting therefor to the said George ; and avers that the said George remained largely indebted to the said Charles, after all money belonging to him, which came to the hands of the latter, had been applied towards the payment of the debts of the former.

He also denies all the facts alleged in the bill going to show fraud in the mortgage ; but he says that the said George Bridge, George L. Miller and Lyman Richardson, as partners, embarked in the enterprise of building the Herndon Hotel in Omaha ; that they were overtaken by the revulsion of 1857, 8, and became indebted in the sum of $60,000, for which the judgments mentioned in the bill were recovered ; that they were insolvent, and neither the said George Bridge, nor the said Lyman Richardson had been able to discharge any part of the said debts ; but said Miller had acquired large funds, in the course of the late civil war, which he had used in buying in these debts, and was, in the name of the complainant, asserting them against his co-defendants in fraud of their rights.

He also admits the conveyances, alleged in the bill by him, to Hileman and Murphy.

On the 15th of November, 1867, the defendant Hileman filed his answer to the bill, to the same effect as the answer of the defendant Finn.

To these answers replications were filed.

Proofs were taken by the parties, which consisted mainly of records of the several judicial proceedings alleged in the pleadings. Upon the hearing a decree was rendered in favor of the complainant, letting him in to redeem. It was also referred to a special master to inquire and report the amount due on the mortgage, and also the amount of the rents and profits which had come to the hands of the defendant, or any of them, and what expenditures they had

MILLER *v.* FINN.

made on account of the premises. The defendants were required to produce before the master all books, papers or documents in their possession, touching the matters of the said account. The master issued his usual master's summons, requiring the defendants to produce the mortgage and evidences of debt secured thereby. But on the hearing before him no documents were produced. Oral testimony as to the receipts from and expenditures on account of the property was taken. He reported that no showing was made of the amount due upon the mortgage, and that the sum of $4,960 had come to the defendant Finn, and the sum of $8,625.16 had come to the defendant Hileman, from the rents and profits. The complainant filed exceptions to the report. The matter was re-referred to the master, who reported further a sum due on the mortgage, and also expenditures on account of the property, by the defendants. To this report the complainant also filed exceptions. The accounts having been adjusted by his Honor Judge CROUNSE, in the final order, the complainant appealed therefrom to this court.

The defendant Hileman moved this court to transfer the cause to the United States Circuit Court, for the District of Nebraska, filing the petition and affidavit of prejudice prescribed by the acts of Congress in that behalf, and also tendering a bond.

This motion was argued by

*Redick* and *Briggs*, in support thereof.

*J. M. Woolworth*, contra.

Upon this motion the opinion of the court was delivered by MASON, Ch. J.

The counsel who made this motion stated on the argument, that if this application was refused they did not pro-

MILLER *v.* FINN.

pose to appear further in. this.court. Their purpose may be to place the record of this cause in the. United States Circuit Court and proceed to trial therein, notwithstanding the order of this court in the premises.

Should we retain the cause and.determine it against these applicants it is plain to see that a conflict between the State and Federal Courts may occur, and. possibly between State and Federal authority.. In view of. the possibility of such an unhappy and mischievous event occurring, we have deemed it proper to reduce our views to writing. We do this in order, if possible, to prevent such a result, by setting before the judge of the Federal Court, the counsel and all parties concerned, our view of the law. We have looked into the record in this.case, not to determine the rights of parties, but to see what has been the course of this litigation, and the nature of it, and it will be well to here state it.

This action was commenced by a bill in chancery, filed by the assignee of certain judgments, against a mortgagee, to have the mortgage declared by the court void as to creditors ; or, if it shall appear to be valid, to redeem the mortgage. It appears that as against all the parties but those represented here by the complainant, the mortgage was foreclosed in equity, and that the defendant Finn, was the purchaser at the sale of the premises. He sold a part of the premises to the defendant Hileman, and a part to the other defendants. The complainant, claiming that the parties who assigned their judgment to him were not brought before the court in the foreclosure case, has impleaded here the said Finn and Hileman, as well as all others who are in any way interested in the subject-matter of the suit.

This bill was filed in the District Court of the Territory of Nebraska, on the 21st day of August, 1865. On the 27th day of July, A. D. 1866, Finn filed his answer. On

Miller *v.* Finn.

the 25th of November, A. D. 1867, Hileman answered; no other defendants answered, and the bill was taken as confessed against them. In July, 1868, a decree was rendered in the District Court of the State in favor of the complainant. In this decree he was adjudged entitled to redeem the mortgage, and a reference was ordered to take an account of the rents and profits. From this decree, the defendants, Finn and Hileman, appealed to this court and filed their transcript in December last. The account ordered, having been taken and an order of the District Court made thereon, the complainant appealed to this court and filed his transcript last January. At the last term of this court, Hileman and Finn filed several motions to strike certain papers from the record, and suggesting a diminution of the record; and, upon an affidavit alleging sickness of counsel and other reasons, moved the court to continue the case until this term. This is a brief history of the cause up to the filing of this motion.

Upon the argument, counsel who made this motion, frankly admitted that Hileman was a citizen of Nebraska until a week ago, when he removed to Iowa for the purpose of being able to effect a removal of this cause from before us into the United States Circuit Court.

We are, then, presented with this proposition: that a party may come into the court of his own State, and invoke and submit to its jurisdiction, litigate the cause through years, and through every stage of it until he is defeated and a decree rendered against him, and appeal to a higher court and invoke its aid, and then, by a temporary removal, made by him for the very purpose, oust the court of all power over him for the enforcing of its decree, and go into another forum to there lead his adversary a like chase after his rights. It is a startling proposition; it leads to consequences most momentous. It effectually abolishes the courts of last resort in the States; the Supreme Courts of

Pennsylvania, Massachusetts, New York and Ohio, as well as of Nebraska. In place of these great tribunals which the people reverence, it substitutes a United States District Judge, who, in his own court, has no jurisdiction, except of certain crimes against the United States, and of bankruptcy and admiralty cases. It reduces the courts of general, original jurisdiction, concurrent with the Federal Circuit Courts into mere examining tribunals; into mere clerical machines for preparing causes for trial and hearing, but incapable of deciding any question upon which their judgment has been invoked. If either party object and acts upon his objection by temporarily removing to another State, it completely annihilates the State judiciary; and the position taken ousts the State Court of all power; completes the work of empire and consolidation begun in Congressional action, and makes it effective. These are the consequences of the proposition insisted upon by counsel for the motion.

Let us now turn and look at the act itself, and see if Congress has attempted to do this, which, until now, has never been conceived or attempted. And, in considering the legislation referred to as supporting this proposition, we shall endeavor to carry out the intent and purpose of Congress upon that subject. We will resort to no refinement of construction, but take the acts as they stand and give them a reasonable and obvious construction without leaning to one side or the other, or favoring one view more than another, uninfluenced by the consequences to which we have adverted.

The act of 1867, is an amendment of the act of 1866. It purports to cover the whole ground of the former statute, and appears to be intended as a substitute for the preceding enactment. It may be questionable whether it must not be taken as repealing and standing in the place of the former law, and being the only one applicable to the case at the bar. I shall, therefore, turn my attention to its pro-

Miller *v.* Finn.

visions first. The ground for the removal of a cause from a State to a Federal Court, specified in the act, is the existence of local prejudice or influence which prevents the due administration of justice. Such a prejudice may exist in a locality of limited boundary, in a neighborhood, town or county. But it certainly cannot, in any conceivable case, extend to a great State. It may perhaps be charged against a local court, but how can it be predicated of a Supreme Court of a State, a court of appellate and final jurisdiction ? The former, from a limited extent of territory from which its jurors are drawn, all of whose inhabitants may be known to the judge, is liable to local influence ; but the latter, whose members come from distant parts of a whole State, and are accustomed to rise above prejudice to administer the law, is not reached by local influences. If Congress intended to say that which is contended for, it offered a gross indignity to the State Courts, many of which have been and now are the peers in learning, wisdom and popular respect of the National Supreme Court. I cannot believe that Congress meant any such thing. The reason, then, prescribed in the law for awarding a removal from the State to the Federal Court being confined to the State Court of original jurisdiction, it follows that the act does not apply to the appellate court. The terms used in the two acts cited are, in one respect, substantially the same. The first act says, "In any case already commenced, or hereafter to be commenced, in any State Court," of a certain character may, by certain proceedings, be removed from that to the Federal Court. And the second says, "That when a suit may be brought in any State Court," it may, if of a similar character, be, by like proceedings, removed from that court. From what court, then, is the cause to be removed ? That in which it is commenced or brought. This is the court of original and not appellate jurisdiction.

These acts both require the application to be made before

MILLER v. FINN.

trial or final hearing. It is insisted that when a cause is appealed, it is tried or finally heard in the appellate court. The words "trial" and "final hearing" are two distinctive terms. In a common law cause we never apply the term "hearing," but "trial." On the other hand, we never speak of the argument upon pleadings and proofs, before the judge in a chancery cause, as a "trial." To that we apply the term "final hearing." These two words are used in the acts of Congress, so as to include both chancery and law cases within its provisions. And the use of them is corroborative evidence of the intention of Congress to require the application to be made in the court of original jurisdiction. But aside from this, take the terms of the statute just as we find them, without reference to any other words. Has there been a final hearing of this cause in the State Court? So the order and decree state. The time is past, then, for making this motion, for the law only authorizes it to be made before, *not* at any time after the hearing.

Again: These statutes providing for the removal of causes, may all be laid side by side and read together as one single enactment. This is often done in considering statutes. In 1863, in the Habeas Corpus Act, Congress provided, that a certain limited class of cases might be removed from the State to the Federal Court after judgment, by appeal or writ of error. It was thought necessary to provide for this most extraordinary proceeding by express terms. Lay that and the act here cited together, and the two may be read thus: Causes brought in State Courts against persons acting under executive orders to suppress the rebellion, may be removed from the State Courts to the Federal Courts after judgment, by appeal or writ of error; but causes in State Courts, between citizens of different States, may be removed before trial or final hearing. The expression in the one act of the right of removal after judgment in express and apt terms, leads to the irresistible

MILLER v. FINN.

conclusion in the case where like terms are not used, that the right of removal must be availed of before trial or final hearing in the court of original jurisdiction. Nothing can be more consistent with reason and propriety. I have now shown that Congress never intended to enact the enormity which is here contended for, and have not, in fact, done so. Now let us look at this case particularly. The act of 1867 provides that a non-resident citizen, if he will make and file in such State Court an affidavit, may have the cause removed. Who makes the affidavit? He, the non-resident citizen, not his agent or attorney, but himself. Have we Finn's affidavit here? No, it is only his attorney who makes the affidavit. The necessary showing as to him has not been made. If it is true that the act of 1866 is repealed by the act of 1867, this is the end of this application; for until the act of 1866 was passed the Supreme Court of the United States always held, that all parties must apply to remove and be of such citizenship as to come within the jurisdiction of the Federal Court. As we have no proper showing as to Finn, and as the cause cannot be removed as to him, then it cannot be removed as to Hileman. But suppose the act of 1866 be still in force, and a cause can be divided between the two courts, how stands the case? Can there be a final determination of the cause as to Hileman without the presence of Finn? Let us return to the nature of the cause. It is, in one aspect of it, a bill to redeem a mortgage. Finn owns one part, and Hileman another part of the mortgaged premises. Each is entitled to a part of the money the plaintiff must pay in order to be let in to redeem. Each has received a part of the rents and profits which must be credited on the mortgage debt. The complainant must pay the whole debt, less the rents and profits, and therefore each person interested in the determination of the amount of the debt, and of the rents and profits, must be before the court.

MILLER v. FINN.

Being required to pay the whole debt, the complainant is entitled to the whole mortgaged property; and each person holding any part of the property must be before the court in order to surrender it. *Childs* v. *Childs*, 10 *Ohio State*, 339; 4 *Kent's Com.* 163; *Simon & Stuart*, 425. It follows then, even admitting the act of 1866 to be in force, that this case is not within its provisions.

There is no such bond as is required by the statute. The bond tendered does not, in its conditions, comply with the requirements of the act in providing for the appearance of the parties on the first day of the next session of the Circuit Court, and is otherwise defective. Besides, the sureties have not justified, and we cannot know that they are sufficient. The penal sum of one thousand dollars is quite inadequate if we are permitted to consider the effect of this proceeding. This property rents for a large sum as the record shows, and the defendants are receiving the rents. If this motion should be allowed and the defendant failed to remove the cause, it would work a delay of more than six months. The penal sum of $1,000 is altogether insufficient to indemnify the complainant for the delay, if the issue should finally be found in his favor. I have treated those acts of Congress which bear upon the question as constitutional. That is a great question on which it has not been necessary to enter.

But I will say, it is extraordinary, after a party has invoked and voluntarily submitted to the jurisdiction of a State Court, if he can withdraw into another jurisdiction against the judgment and consent of that judicial power he has called into action. The opinion of Mr. Justice MILLER, in *Monell* v. *Johnson* (*Woolworth's Reports*, 397), is not altogether satisfactory to my mind, although I have the greatest respect for him as a jurist. It does not however touch this case.

I wish further to say, that, while in determining this

motion the court has looked into the record to learn its history and character, we have made no examination which affects the merits. We will approach the argument and determination of this cause with an honest effort to do impartial justice between these parties, regardless of imputations and reflections.

The motion is overruled and the cause set down for argument.

Motion overruled.

The cause then came on to be argued by

*J. M. Woolworth,* for the complainant.

### FIRST POINT.

By virtue of the judgment recovered against George Bridge, by George Pomeroy, William H. Benton and George H. Chase, the execution issued thereon, the sale under the same, the order confirming the sale, and directing the making by the sheriff of a deed to the purchaser, and his deed made accordingly, the complainant acquired a title to the premises so sold and conveyed to him, which dated from the 16th day of October, 1859, and which will support this action.

I. Those proceedings are regular on their face; and unless tainted by some infirmity, not so appearing, were effectual for the purposes for which they are alleged.

1. The record shows an indebtedness in favor of the plaintiffs in these proceedings, against George Bridge individually; and a civil action instituted by them as individuals, against him, to collect the same; that on the 20th day of March he, by his attorney, appeared thereto; that at the March term, 1859, to which the action was brought, it was continued to the October term of that year, which term commenced on the 16th day of that month; that at that

MILLER v. FINN.

time a judgment was rendered in favor of the plaintiffs and against the defendant; that on the 18th day of September, 1863, an execution issued, and was levied on the premises, and in virtue thereof, they were, on the 24th day of October following, sold to the complainant; which sale, by the proper order, was confirmed; and in pursuance of the directions thereof a deed made to the complainant.

2. The estate thus vested in the complainant, dated from the 16th day of October, 1859, because the judgment, having been rendered at the October term in that year, and that term having commenced on that day, the premises became "bound for the satisfaction" of the judgment, from that day.—*Code of* 1858, *Sec.* 435.

3. And the deed thus made, vested in the complainant, a title to the premises, which will support this action. *Code of* 1858, *Sec.* 452.

II. These proceedings are not tainted by any infirmity which does not appear on their face.

1. The previous sale and conveyance to Markham, does not intervene.

(1). That sale, and all the proceedings upon it, were, as alleged by the defendants themselves, utterly void. See the answers.

(2). The deed to Markham did not purport to pass to him any other title than such as George Bridge had, on the 24th of October, 1859; at which time, the premises were "bound for the satisfaction" of the judgment of Pomeroy and others.

2. The validity of the execution sale, is not affected by any consideration arising out of the amount bid and paid at the same.

(1). It is not shown that the amount bid and paid was not equal to the full value of the title so purchased.

(a). There is no proof whatever of the value of the property.

(*b*). If the allegation in that behalf in the answer had been established by evidence, that is, that the premises sold were worth $15,000, inadequacy would not have appeared,.for the property stood charged with liens to the extent of its alleged value.—*Erwine* v. *Parham*, 12 How. 197.

(2).·.But had the inadequacy been made to appear, it could not avail the defendants in this suit.

(*a*). Bridge was the only person injured thereby, and, therefore, the only person who could complain.

(*b*). The order of confirmation cured the defect. While that stands, the sale must stand; and that must stand until avoided by a direct proceeding for the purpose.—*Voorhees* v. *Bank of United States*, 10 *Pet.* 449 ; *Warner* v. *Webster*, 13 *Ohio*, 505.

(*c*). Under the circumstances of the case, this sale must stand, the debtor himself having, by mortgaging and other.wise incumbering the premises, caused the evils complained of.—*Hildreth* v. *Sands*, 2 *John. ch.* 35, 50 ; *Affirmed pr. r.* 14 *John.* 493 ; *Douglas* v. *Huston*, 6 *Ohio*, 154.

(*d*). If the case, instead of being considered one of a fraudulent conveyance, be considered one to redeem the mortgage, the consideration paid is not material.—1 *Powell on Mort.* 97 ; *Anon.* 3 *Aik.* 313 ; *Cowles* v. *Raquet*, 14 *Ohio*, 33.

3. The validity of the sale is not affected by any fraudulent acts connected therewith, charged against either the complainant or George L. Miller.

(1). The sweeping allegations in the answer are unsustained by proof; but on the other hand are disproved so far as they were inquired into.

· (*a*). Allegations of fraud, made to impeach and avoid a judicial record, should not be allowed unless supported by clear proof.

. (*b*). As affirmative matter, alleged in the answer and

denied by the replication, it was incumbent on the defendants to sustain these allegations by proof.—3 *Greenleaf's Evi. Sec.* 287.

(2). If there was any fraud, it was against Bridge alone, and he alone can complain.

(3). An exclusive remedy has been provided for the alleged fraud ; and a day fixed within which it must be sought ; which day has long since elapsed. It cannot be sought in this collateral way. R. S. Code, sec. 606 and 9.

## SECOND POINT.

The complainant is the assignee of several judgments against George Bridge, George L. Miller and Lyman Richardson, which are valid and subsisting liens upon the premises.

1. On the 2d of February, 1859, John Davis recovered a judgment against those parties, which on that day became a lien upon the premises, and has, by several successive assignments, come to the complainant.

2. The other judgments alleged in the bill were also duly recovered and assigned to, and are held by the complainant.

## THIRD POINT.

The complainant's rights are not affected by the decree. of foreclosure in the case of Charles Bridge against George Bridge and others.

1. Davis was not named as a defendant in the bill nor the decree, and the lien of the judgment recovered by him was not affected by the foreclosure suit. See pages 241, 2, 335 ; *Haines* v. *Beach*, 3 John. ch. 459 ; 2 Story's Eq. Jr., sec. 1023 ; *Neate* v. *Duke of Marlborough*, 3 Myl. & C., 416 ; *Roswell* v. *Bank of Niagara*, Hokpins, 582 ; S. C., 9 Cow., 409 ; *Benedict* v. *Gilman*, 4 Paige, 580.

2. Nor were George Pomeroy, William H. Benton and George H. Chase, named as defendants therein ; and the

lien of the judgment recovered by them was not affected by the foreclosure suit.

(1). The naming of "Pomeroy and Benton" in the record as defendants, and the notice advertised in that way is of no avail; because, while the foreclosure suit was pending, no statute authorized an action against a partnership as such.

(2). And even had the statute authorized a suit in that form, as this was not the name of the partnership, it could not be taken as a party to the proceedings.

(3). And the individual members of the firm could not be thus made parties so as to affect their individual rights.

(4). And not being affected by the proceedings in the foreclosure suit, they could enforce their lien by execution and sale. *Watson* v. *Spence*, 20 Wend., 260; *Fricho* v. *Kramer's Lessee*, 16 Ohio, 125; *Childs* v. *Childs*, 10 Ohio St., 339.

3. George Bridge was not a party to the foreclosure suit, and the judgments held by the complainant were, for that reason, unaffected by it.

(1). He was not made a party by the proceedings for publication, because the affidavit did not state that he could not be served with process.—*Stanton* v. *Ellis*, 2 Kern., 576.

(2). The appearance entered by Hamilton was not effectual to bring him before the court, because Hamilton was not an attorney.

(3). The appearance of George Bridge to the cross-bill filed by Markham did not make him a party to the original suit.

(4). No suit pending against him, creditors recovering judgments, did not acquire their liens, *pendente lite*. *Bishop of Winchester* v. *Beaver*, 3 Ves., 314; 316 note.

### FOURTH POINT.

If the mortgage was valid, the complainant is entitled to

be let in to redeem the same, and to be subrogated to the rights of the defendants.

1. Finn, as the purchaser at the foreclosure sale, and Hileman as the purchaser from him, stand in the position of Charles Bridge ; that is, of the mortgagee in possession. R. S., p. 543, sec. 853 ; 4 Kent's Comm. 185*, and note *b* ; *McArthur* v. *Franklin*, 16 Ohio St., 193 ; *Childs* v. *Childs*, 10 Ohio St., 339.

2. As the owner of the equity of redemption, by virtue of the execution sale under the judgment of Pomeroy and others, and as the owner of judgments subsequent to the mortgage, the complainant is entitled to redeem the mortgage, and be subrogated to the rights and position of the defendants. 2 Story's Eq. Jr., sec. 1023.

3. Nor can the defendants prevent this by now paying off the liens held by the complainant.

(1). Never having tendered payment, they are now too late to ask leave to do so.

(2). The complainant, as absolute owner of the equity of redemption, cannot be deprived of it by any sale to be forced upon him by the court.

(3). It is subsequent lien-holders only, who have a right to redeem incumbrances and be subrogated.—*Story's Eq. Jr.* sec. 493, 502, 567, 589, 635–8 ; *See* 4 *Kent*, 185, *note a.*

### FIFTH POINT.

But in this case, there is no mortgage.

1. The defendants were specially called upon to produce evidence of the mortgage, and of the mortgage-debt, and deliberately refused to do so. The decree in the foreclosure suit was not evidence of a mortgage.

2. When Charles Bridge, the mortgagee, took the execution-title from Markham, the mortgage was merged in the equity of redemption.

MILLER v. FINN.

(1). The allegations against the validity of the sale to Markham are not sustained by the proof.

(2). It cannot be true that the estate acquired by Markham at the sale was fraudulent as well against him as Bridge, when it appears that it was alleged in his answer and cross bill in the foreclosure suit.

(3). It was not so esteemed by Bridge, who paid $1,200 for this alleged void title.

(4). It passed such estate as George Bridge had, and that was sufficient to effect the merger of the mortgage.—*Mills* v. *Comstock*, 5 *John. Ch.* 214; *Burnet* v. *Dennison, Id.* 35.

3. The alleged mortgage, and all the proceedings under it, were, as to creditors, fraudulent and void.

(1). The expenses of the litigation, and most of the expenses of procuring Markham's title, were defrayed out of funds which belonged to George Bridge.

(2). The alleged mortgagor and mortgagee had, in the suit between them, the same attorney and the same agent.

(3). Hamilton having been the agent of George Bridge at the commencement of suit, and also of Charles Bridge, and also of Finn, when he, by his purchase at the foreclosure sale, became a party to the proceedings, and it not appearing that the rents collected by him, were so collected in any other capacity at one time than another, no change of possession from George Bridge is shown, or can be presumed.

(4). The account by Finn of the payment of his bid is most unsatisfactory and contradicts his answer.

(5). Finn, at the time of his purchase, was the receiver of Charles Bridge, and he took his title from the master, as such receiver.

(6). The equivocal circumstances of the case, Hamilton's agency for parties appearing to have adverse interests, the possession of the property remaining apparently unchanged, the mortgage-debt not appearing on the face of the mort-

MILLER v. FINN.

gage, and evidences of it being specially called for by the court, and not produced, the secresy of the payment of the bid, the silence of Finn, when called upon to testify how the payment was made by him, the relations of the parties, the insolvency of George Bridge, have been suffered to remain unexplained by parties who alone held in their hands proofs which would vindicate their dealings and the transaction from the charges made in this bill against them. It is impossible to resist the conviction, that they kept silence because the truth was fatal to their defense.—*Callan* v. *Statham,* 23 *How.* 577 ; *Hildreth* v. *Sands,* 2 *John. Ch.* 35.

### Sixth Point.

The final order upon the master's reports, should have awarded to the complainant the whole amount of rents and profits, shown to have been received by the defendants, with interest; and should not have allowed to the defendants the mortgage debt.

1. The decree of the court and the master's summons, required the defendants to show what they had received from the rents and profits, and what the mortgage debt was. They refused to do so, and have thus put themselves in contempt and are entitled to no favors at the hands of the court.

2. The rents and profits should be allowed in full, and with interest; for being largely in excess of the interest, they are to apply on the principal of the debt.

3. No mortgage debt has been shown, and therefore the rents and profits were wrongly received by the defendants, and are to be accounted for to the complainant as money had and received to his use.

*Redick & Briggs,* for defendants.

I. The bill alleges that Dowdall, Markam & Co., recovered

MILLER v. FINN.

a judgment against George Bridge, for $1,400, in October, 1858, prior to all other judgments; that in September, 1859, execution was issued on the judgment, and the premises in question sold to Markam; sale confirmed and deed made to Markam; that, February 12th, 1862, Markam conveyed to Charles Bridge, the mortgagee, but that the sale was really made to George Bridge, the mortgagor, and that the latter paid the consideration.

It is a rule of law, without exception, that the complainant must make his case upon the allegations of his bill, and must stand by what he has therein alleged. The allegations of the answer cannot help him any. Story's Eq. Pl., secs. 257, 264; *Moran* v. *Palmer*, 13 Mich., 312.

Now the bill alleges this sale and conveyance to Markam; and although it is denied by the answer, still the complainant cannot say that his own pleading is false.

We then have all of George Bridge's interest in this property in the hands of Markam, no equity of redemption left in Bridge.

The sale from Markam to Charles Bridge is admitted by the answer, and the allegations that George Bridge's money paid for the title is denied.

II. The equity of redemption of George Bridge, the mortgagor, was disposed of in the foreclosure suit, if the court had jurisdiction over him.

The bill makes him a party defendant. Record 249.

1. There was notice to him by publication. Record 288.

2. His appearance was entered in the case by his agent, Hamilton. 318.

3. He appears in the cause and files answer to cross-bill of Markam. Record 322. This cross-bill not only asks a discovery, but prays that the mortgage be cancelled because it is fraudulent.

George Bridge is made a party to this bill, and he answers to the merits of the controversy. The case was

finally heard upon the cross-bill as well as the original bill ; by the decree, the equity of redemption is foreclosed, and all the estate of the mortgagor passed to Finn, and Hileman has succeeded to Finn's rights, and he is vested with all the estate which the mortgagor had in the premises, subject only to such judgments, if any, as may be liens on the same.

What then did Miller get at the sheriff's sale in 1863 ? He simply got nothing, for the equity of redemption had ceased to exist, as such, but was merged in the legal title which Finn acquired at the mortgage sale. Miller is in no better situation than the judgment creditor, and the most he can ask is to have his $250 refunded with interest.

We conclude, therefore, that Miller cannot be permitted to redeem on the theory that he is the owner of the equity of redemption. If entitled to redeem at all, it is because he is a judgment creditor.

But a judgment is not a lien upon an equitable title, only upon the legal title.—*People* v. *Irwin*, 14 Cal. 428 ; 21 U. S. Dig. 359, sec. 134 ; *Jackman* v. *Hallock*, 1 Ham., 318, 144.

III. It does not appear what amount, if any thing, was paid for the judgment by the complainant. Can he come into a court of equity and enforce this judgment against a purchaser at the mortgage sale, or his grantee, Hileman, now in possession, without showing that he has paid something for the judgment ?—*Hascall* v. *Codman*, 8 Met., 336.

IV. Hileman is a *bona fide* purchaser of the premises, for a valuable consideration, without notice of Miller's claim.

The bill does not charge that Hileman had any notice of Miller's equities. It would seem that the most that Hileman can be called on to do is to pay Miller back the amount he has paid for the Davis judgment, with interest, if the court can find from the record what amount that is ; and if Miller has declined to show the court the amount, if

MILLER *v.* FINN.

any thing he has paid, he cannot expect relief in this case. But Hileman is not bound by the testimony of the complainant, as the record does not show that he had any notice of the taking of the same, nor did he appear.

V. But in no event can Miller be permitted to take the property unless the appellants refuse to pay the judgment. The decree in this case should be, that the appellants pay the, amount, at most, of the judgment, with interest, in a short time to be fixed, and on failure to do so, the complainant have a right to redeem the property.—*Brainard* v. *Cooper*, 10 N. Y. 356 ; *Vroom* v. *Ditmas*, 4 Paige, 525, 535 ; *Wood* v. *Oakey*, 11 Id., 400, 404 ; Story's Eq. Pl., sec. 84 ; 2 Leading Cases in Eq., 238.

VI. If a judgment creditor has a right to redeem, it is by virtue of some law, either statute or common law. There is no statute law in this State on the subject. We have the common law then, but at common law lands were not subject to sale on execution. 4 Kent, 428.

In all States where redemption is allowed, it is by virtue of the statute law of the State.

Equity will of course afford relief to the creditor, as under our law the judgment is a lien on the lands of the debtor. But what relief?—not redemption, but it will give him a lien on the *surplus* after the mortgage is satisfied. If the property was sold for an inadequate price, on a proper case made by the bill, the court will order a re-sale, that a surplus, or a greater surplus, may be realized for the benefit of the creditor. This, however, is not the case here made by the bill or proofs.

MASON, Ch. J.

This is an appeal from the District Court of Douglas county, in a suit in equity originally brought by the appellee against the defendants to declare void a certain

mortgage and the decree and proceedings had thereon, or if said mortgage should be found valid, then to redeem certain premises described in the mortgage from under the same and the decree of foreclosure. It appears by the pleadings and record that on the 22d day of February, 1857, George Bridge, then the owner of the premises in question, mortgaged the same to Charles Bridge, his brother, to secure a large sum of money due from George to Charles, and to secure further advances; and, that on the 19th day of May, 1860, Charles Bridge commenced his proceedings to foreclose said mortgage. Charles Turner filed his answer in that action July 26, 1860. O. D. Richardson filed his answer July 26, 1860. Dowdall, Markham & Co., answered September 28, 1860. William Patrick, James Patrick and Griswold E. Warner, composing the firm of Wm. Patrick and Company; Taylor Blow and William T. Blow, surviving members of the late firm ofCharless,Blow and Company, and administrators of Joseph Charless, deceased; George W. Thatcher, Frederick Gridley and John H. Killom, composing the firm of F. Gridley & Co., filed their joint and several answers October 11, 1860. On the 12th of the same month, Judd and Leeds filed their answer. The record of the suit to foreclose the mortgage shows that Samuel B. Woolworth, jr., Aaron H. Blair, George R. Smith, Mrs. George B. Bronson, John C. Hileman, John A. Parker, A. Sahler & Co., and James Murry, were each personally served with process, and that on the 30th of October, 1860, an order was made that the bill be taken as confessed as to each of them. On the 14th of January, 1861, William H. Markham filed his answer; and on the 17th of the same month filed his cross-bill, and on the third day of April, 1861, Charles Bridge and George Bridge filed their answer to this cross-bill; and on the seventh of May he filed his replication to the answer. Replications were filed to the answers of the several defend-

ants in the foreclosure suit. On the 26th of November, 1861, after a protracted litigation in which the defense of fraud was set up and urged against the validity of the mortgage, and that the same was made to hinder, delay and defraud creditors, a decree establishing its validity and for a sale of the mortgaged premises, was entered. Upon this decree the premises now in controversy in this bill were sold to A. T. Finn, which sale was confirmed on the 19th of May, 1862. It is shown by the record that sometime in July, 1865, Finn sold and conveyed the west forty-four feet of lot five, in block one hundred and twenty, to Myer Hileman, the same being a part of the premises sold upon the decree of foreclosure, and in the same year Finn sold the west part of lot seven, in the same block, to Michael Murphy. At the October term, 1859, of said court, Pomeroy, Benton & Co., recovered a judgment against George Bridge, and in 1863 issued an execution thereon which was levied on the west forty-four feet of lot five, in block one hundred and twenty. At the sale, the complainant in this action was the purchaser, and the sale was confirmed at the October term, 1863. At the March term of the District Court, 1858, John Davis obtained a judgment against George Bridge and others, and in 1865, this judgment was assigned to the complainant. At the October term, 1859, of the same court, William Dean & Co. recovered a judgment against George Bridge and others; and it is alleged in the bill and denied in the answer that the judgment was assigned to the complainant in this suit. There is no evidence offered to show that this last judgment was assigned to the complainant in this suit, or that he is the owner thereof. At the October term, 1858, Dowdall, Markham & Co., obtained their judgment against George Bridge and others, had execution issued thereon, sold the west forty-four feet of lot five, in block one hundred and twenty, to William H. Markham, on the 24th of October,

1859, which sale was soon thereafter confirmed, and the sheriff made a deed to Markham in pursuance of such sale. On the 12th of February, 1862, Markham sold and conveyed the same premises to Charles Bridge. The present bill alleges a large number of judgments obtained against George Bridge by various persons, which judgments, it is alleged, have been assigned to the complainant. These judgment creditors of George Bridge were all made parties and served with subpœna, and most of them answered the bill. Wm. Dean & Co. were made parties to the foreclosure suit, but for some reason the complainant in the foreclosure suit dismissed his bill as to them. The complainant prays that the deed from William H. Markham to Charles Bridge, may be declared to be in trust for George Bridge, and that the premises so conveyed be liable for the debts of George Bridge; that the mortgage by George to Charles Bridge was made to hinder, delay and defraud the creditors of George, and that it and the proceedings to foreclose the same be decreed void; or if it shall be found that the mortgage is valid, that the usual accounts be taken and that the plaintiff be at liberty to redeem the premises upon payment of the amount found due, etc., and that thereupon the parties in possession of the premises deliver up the possession thereof to the complainant. In the record of the proceedings in the foreclosure suit of Charles Bridge against George Bridge and others, upon bill, answers, replications, and cross-bill of William H. Markham, and the answer of George and Charles thereto, and replication of Markham; and after decree of sale of the mortgaged premises upon bill, cross-bill, answers and replications, there is the following entry: " *William H. Markham v. George Bridge and Charles Bridge.*

To the Register of said Court:

William H. Markham directs that his prayer for appeal to the Supreme Court in the above entitled cause, and also

MILLER *v.* FINN.

his request for a stay of sale of the mortgaged premises, be withdrawn, hereby consenting to the decree of the District Court thereon, and to a sale of said premises at such time as Charles Bridge or his solicitor may direct.

*James M. Woolworth,*

Solicitor for MARKHAM.

Dated, OMAHA, *February* 12, 1862."

This entry, it will be observed, is made on the very day that Markham conveys his interest in the west forty-four feet of lot five in block one hundred and twenty, to Charles Bridge, which conveyance is charged in the bill to have been in trust for George Bridge. That decree found the amount of the mortgage debt then due to be eleven thousand nine hundred and sixty-six dollars and twenty-nine cents, and directed a sale of the mortgaged premises to pay said amount and costs ; all the mortgaged premises, except the forty-four feet aforesaid, to be first sold, and if the amount thus realized was insufficient to pay the mortgage debt, then the said forty-four feet to be sold, and the proceeds to be applied to the satisfaction of the mortgage debt. The master sold the premises, William H. Markham assenting thereto, and to the decree. The amount realized from the sale of the premises was seven thousand seven hundred and seven dollars, which was largely inadequate to satisfy the mortgage debt. What interest then had William H. Markham in the west forty-four feet of lot five in block one hundred and twenty, consenting to the sale and decree and the appropriation of the funds as directed in the decree ? It is plain that he had none at all. What interest did Charles Bridge acquire in the premises by virtue of the conveyance of Markham ? Simply none at all. He could convey no greater interest than was vested in him, and that was only a contingent interest depending upon the fact whether the premises included in

the mortgage, exclusive of the forty-four feet aforesaid, should sell for enough to satisfy the mortgage debt; if not, the forty-four feet was to be sold under the decree of foreclosure. This fact was known to all the parties to the record in the foreclosure suit, for the decree therein was made and enrolled on the twenty-sixth of November, 1861. Then it is clear that Charles Bridge derived no interest whatever in the forty-four feet aforesaid from William H. Markham. This disposes of the question of trust as to the west forty-four feet of lot five in block one hundred and twenty. This also disposes of the question of merger, but that will be alluded to again.

Are the mortgage from George Bridge to Charles, and the proceedings to foreclose the same, void? The present case is widely different from that of *Callan* v. *Stratham*, 23 How. 477, cited in the argument. That case was a creditor's bill to set aside a deed made by J. F. Callan to M. R. Callan, his brother, while J. F. was largely in debt, and several suits were impending over him and maturing to judgments to which the property conveyed would have been subjected. The conveyance was made for a consideration, stated in the deed to be $4,900, which, according to the estimate of witnesses who were well acquainted with the premises, was worth $15,000, assuming the title to be good, and the vendor continued in possession of the property conveyed, leasing the buildings and collecting the rents in his own name, and not accounting to the vendee for them. It did not appear that the vendee took any part in the management of the property, or exercised any acts of ownership over it, after the absolute deed of conveyance to him. The creditor's bill was brought to set aside that conveyance, and certainly it was a case surrounded with evidences of fraud sufficient to justify the court in setting the conveyance aside. From the decree setting aside the conveyance an appeal was taken, and the decree was

MILLER *v.* FINN.

affirmed.  In the present case instead of an absolute deed and secret conveyance to defraud creditors, we have a mortgage given to secure a debt of a certain amount, named in the mortgage, and future advances.  Nor does it appear that George Bridge had any debts whatever hanging over him, except the one secured by the mortgage.  It was not necessary that the mortgagee should take possession of and exercise acts of ownership over the property mortgaged. The first act on the part of the mortgagee, after the execution and delivery of the mortgage to him, was to file in the District Court his bill to foreclose the same, and as respects the subsequent creditors of the mortgagor, the mortgagee was not bound to pursue any other course. Upon this suit to foreclose, a decree was rendered in favor of the complainant, and afterwards upon that decree the mortgaged premises were sold to A. T. Finn, a third person.  This was a judicial sale, duly advertised, and it was not until this sale that the whole title passed from George Bridge, the mortgagor, and those holding under him, who were made parties to that proceeding.  It is clear, then, that there is no similarity between this case and that of *Callan* v. *Stratham.*

In the foreclosure suit, the District Court, in the recital of the decree, states that the case was heard upon the bill confessed as to part of the defendants therein, upon the answers of the others, the replications thereto of the complainant, the proofs and exhibits, and upon the proceedings in the cross suit, and then finds in favor of the complainant a large amount due to him from George Briggs.  The decree and sale was assented to by Markham, and completely executed, the foreclosure money paid, and the sale to A. T. Finn confirmed.  Considering the findings of the court as recited in the decree, the fact that the decree has been fully executed, together with the fact that there is no proof which tends to establish the allegation of fraud

in the execution of the mortgage, I can discover nothing which would justify the court in rendering the decree prayed in the bill here before us. Fraud is never to be presumed but must be proven. There is nothing in the record which raises a presumption of fraud in the execution of the mortgage, or the proceedings to foreclose the same. When the decree is executed by sale of the property and payment of the purchase money, followed by a confirmation of the sale, it will not be set aside for the purpose of introducing a party who ought to have been an original defendant.—*Findley* v. *Banks*, 11 *Wheat.* 307. And it is an imperative rule of law that the recitals and findings of a court of general jurisdiction contained in its decrees are not to be set aside and vacated, or in any manner to be disturbed upon the charge of fraud, except upon clear and strong proofs. The presumption of law is that the findings of the court, as stated in the decree, are based upon sufficient proof of the facts, and that the court was fully justified in the rendition of the decree.

The bill charges that neither George Bridge, Milton Rogers, John Davis nor Pomeroy, Benton and Company, was served with subpœna to answer the bill of foreclosure, nor did either of them appear to the same, not did the court acquire jurisdiction of them, or either of them. In respect to Pomeroy, Benton and Chase, who were partners under the name of Pomeroy, Benton & Co., it is only necessary to observe that Pomeroy and Benton, as shown by the record, were served with notice by publication, for the length of time and in the mode and manner provided by the statute. Our statute had then, as it has always since had, a provision for making non-resident parties defendants, and subjecting them to the operation of a decree without personal service of subpœna or otherwise. It is indispensable that some practice should be established by which non-residents owning lands here, or some interest

MILLER v. FINN.

in them, should be made parties to suits in respect to such lands without the service of process, for officers could not serve process without the limits of the State. There seems to me to be no sufficient reason for denying that the court acquired jurisdiction by the usual service in strict accordance with the statute, more especially when the bill is for the foreclosure of a mortgage upon the lands situated within the jurisdiction of the court. I think the rule is settled that when the subject-matter of the suit or controversy is within the jurisdiction of the court, the defendants may be made parties by publication, if non-residents, and if notice is thus given, and the court pass upon the sufficiency of the notice and affidavit which the statute requires to be made as to the fact of the non-residence of those who are notified by publication, neither the sufficiency of the notice or affidavit can be questioned or reviewed collaterally.— *Roswell* v. *Sharp*, 15 *Ohio*, 447. The court, in the foreclosure suit, found the affidavit and service by publication, to be regular and sufficient, and we cannot review that finding in this proceeding. When a proceeding in a court of superior jurisdiction is of such a character that upon final action the court should, from the nature of the case, ascertain and determine whether the action is such in fact that it has jurisdiction, its decree cannot be questioned collaterally.—*Dequindse* v. *Williams*, 31 *Ind.* 444. We think the court acquired jurisdiction over Pomeroy and Benton, and over their rights and interests in the mortgaged premises, by the publication of notice under the statute, and perhaps of their persons also.—*Lessee of Franklin Morgan* v. *Burnet*, 18 *Ohio*, 535. And although it is a general rule in an action brought against partners on partnership contracts, that all who were partners at the time of the contract ought to be joined, yet it is a principle of law well settled that in such cases the omission of a party as such co-defendant is not ground for a non-suit,

[S. C. N.]                    19

and can only be taken advantage of by plea in abatement verified by affidavit.—*Collyer on Part.* 712. This has been held to be the law ever since the case of *Rice* v. *Shate*, 5 *Burr*, 2615 ; 8 *S. and R.* 55. And the failure to plead in abatement is considered as an absolute waiver of the objection.—6 *Taunt.* 29 ; 2 *Johns. Ch.* 382 ; 1 *Sand.* 2916.

In some instances the courts have gone much further, for it is said that in an action commenced against partners, one may enter an appearance for all ; that when several are connected together in partnership, notice to one is equivalent to notice to all in *bona fide* transactions ; that in an action on a promissory note, if the defendants suffer judgment by default, service of rule *nisi*, to compute principal and interest, on one of them is service on all, for *quoad hoc*, they are partners, *Collyer on Part.* 441, 443, and that a notice to one of several partners of a prior unrecorded deed, is notice to all the partners, and will defeat a deed to the same lands subsequently made to all the partners.—*Barnes* v. *Currier*, 1 *D. Chip.* 315.

In *McDuffie* v. *Bartlett*, 3 *Barr. Pa.* 319, it is held that a judgment against Clark & Co., when the nature of the claim of the plaintiff does not appear, the presumption is that it was a partnership claim, and the partnership property might be attached under such a judgment, though the names of the co-partners did not appear in the judgment, and they were not served. Though the above cases and the principle referred to seem to indicate strongly that in proceedings *in rem* and *a fortiori*, in the foreclosure of a mortgage, a notice to part of the members of a former partnership might, and probably would, be notice to all the members of the firm, yet it does not seem to be necessary to give any definite opinion on that question in determining this case. The fact appears in the record that Pomeroy and Benton were made parties to the foreclosure suit, and were served with notice sufficient to determine

this case. By permitting their default, the bill stands as effectually confessed by them as if they had made such confession in open court, or by their answer; and hence they are concluded and barred under the decree of and from all right of redemption as judgment creditors or incumbrancers. And in respect to their partner, Chase, as indicated before, it is not necessary to give an opinion as to whether he is or is not concluded by the confession of Pomeroy and Benton, his co-partners, and whether he has or has not any individual rights which he might enforce on the ground that he was not named as a party and served with process, for the reason that the bill presents no such case for determination. I may add that I am quite clear, that both upon principle and authority, Chase, as well as Pomeroy and Benton, is concluded by the decree.

In respect to George Bridge, it need only be stated that his agent entered an appearance for him, that he recognized the right of such agent to appear for him, and does not now question that right, and that he filed his answer to the cross-bill in the original suit. This made his appearance to the suit complete, for by filing this answer he recognized and ratified the act of his agent, and made himself a party to the original suit. Nor is there anything in the parol evidence to show any inconsistency or fraudulent acts on the part of his agent which would justify the conclusion that there was any fraud or collusion between George Bridge, Charles Bridge, and their agent, Hamilton.

The complainant insists, that by virtue of the execution sale to him under the judgment of Pomeroy, Benton and Company against George Bridge and others, he acquired a title to a part of the premises in question, which will support his action. The rendition of the judgment, the issuance of the execution, the sale to complainant, were proceedings at law, and therefore it is upon principles of law

that we must examine this claim of right made by the complainant.

It is true, the judgment creditor may issue his execution and direct the sheriff to levy on property, still the sheriff is only the instrument which the law uses to sell and turn the debtor's estate into money; of the nature of the estate he is necessarily ignorant, and being only an instrument the law uses to sell the estate for what it will bring in the market, he has no power to make conditions in respect of the title or the price of it. Such sale by the sheriff excludes all idea of warranty, and the purchaser takes all risks, and buys, on his own knowledge and judgment. *Caveat emptor* applies in all its force to him. If this were not so, an execution, which is the end of the law, would only be the commencement of a new controversy. The creditor would be kept at bay during a series of suits before he could reap the fruits of his judgment.—*Smith* v. *Painter*, 5 *S. and R.*, 225; *Glenn* v. *Clapp*, 1 *Gill and John.*, 1; *Owings* v. *Thompson*, 3 *Scam.*, 502. We have already seen that, before the judgment on which his title rests was recovered, the mortgage was made and recorded, and before the sale to him Finn had purchased under the foreclosure. And besides, the property had, before the sale to him, been sold to Markham on the Dowdall, Markham & Co. judgment, which was recovered before the Pomeroy, Benton & Co. judgment. From these facts, it is very plain that at the date of issuance of the execution and sale on the Pomeroy, Benton & Co. judgment, George Bridge had no interest in the premises. Both his legal and equitable interest was wholly divested by the sale of his equity of redemption to Markham on the judgment of Dowdall, Markham & Co. against him, on the 24th of October, 1869, and the sale of his legal title, under the mortgage decree, in the early part of 1862, to A. T. Finn. George Bridge had no possible interest vested in him in or

to the premises at the date of the levy and sale under the
Pomeroy, Benton & Co. judgment, and the attempt to levy
and sell was a mere useless ceremony which did not affect
the interest of any person. It did no good to the judg-
ment creditor. The mortgage and the Dowdall, Markham
& Co. judgment, were each liens upon the premises, superior
to the Pomeroy, Benton & Co. judgment, and so held in
the decree of foreclosure, to which Pomeroy and Benton
were parties. There is another light in which the question
now under consideration may be viewed. Execution is a
common law process for obtaining actual possession of the
thing recovered by the judgment, and is called the life of
the law. Upon it only could the personal estate of the
debtor be seized at common law, for the reason, it was
said, that it was only a chattel that was lent, and therefore
chattels only were liable to pay it.—*Co. Litt.*, 154 ; 2 *Rol.
Abr.*, 472 ; 2 *Bac. Abr.*, 695, 714. And if a plaintiff, after
obtaining his judgment in a personal action, failed to pro-
cure process of execution within a year after judgment, he
was put to his original on his judgment, because it was
presumed to be executed, and therefore the law allowed
him no *scire facias* to show cause why there should not be
execution. Hence, if the plaintiff had slipped his time, he
was put to his action on the judgment, and the defendant
was obliged to show how the debt, of which the judgment
was simply an evidence, was discharged.—2 *Inst.*, 469 ; 2
*Salk.*, 600. Very nearly four years elapsed from the time
the Pomeroy, Benton & Co. judgment was obtained before
process of execution was issued. It is clear that at common
law the plaintiffs in this judgment had slipped their time,
and they could not have either execution or *scire facias* on
their judgment, but would be put to their original action
upon the judgment. Consequently, no rights could be
acquired under an execution so issued. But, since the
statute of Westminster, 2 chap. 13, the rights of parties

and the process of writs are defined and regulated by statutory provisions. The question here is, will the correct construction and proper application of our statute relating to executions put the complainant in any better position than the common law? The Code passed in 1858, sec. 435, provides that the lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which the judgment was recovered. The words, "shall be bound for the satisfaction, etc.," in this section, can receive no other construction, according to their legal effect and the intent of the legislature, than to mean and intend that the judgment shall be a lien on such premises from the first day of the term; and this construction is not only rational, but is rendered conclusive by section 426, which provides that, "if execution shall not be sued out within five years from the date of the judgment, it shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor." Section 461 provides, that "no judgment heretofore rendered, or which may hereafter be rendered, on which execution shall not have been taken out and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of any debtor to the prejudice of any other *bona fide* judgment creditor," and then provides for the relief of judgment creditors in case of appeal, error, injunction, or vacancy in office of sheriff and coroner. This section of the Code is explicit in itself, and as regards a judgment on which execution has not been taken out and levied within one year next after its rendition, it is conclusive upon the creditor that his judgment shall not operate as a lien on the estate of the debtor to the prejudice of any other *bona fide* judgment creditor. The lien is effectually dead and gone, so far as respects the rights and interests of such other *bona fide* judgment creditor, and a levy and sale of the debtor's

lands upon the judgment of such other *bona fide* judgment creditor passes the lands absolved and wholly discharged from the first lien. Section 452 provides, that " when sale. is made upon execution, the deed shall be sufficient evidence of the legality of such sale, and shall vest in the purchaser as good and as perfect an estate in the premises, therein mentioned as was vested in the party at or after the time when such lands and tenements became liable to. the satisfaction of the judgment." Under this section, the purchaser takes an estate in the premises as good and as perfect and complete as was vested in the debtor at the. time of the rendition of the judgment when the lien attached. Now, the Pomeroy, Benton & Co. judgment was. obtained at the October term, 1859, and the execution was not issued until September 18, 1863, nearly four years thereafter. The Dowdall, Markham & Co. judgment was obtained at the October term, 1858, and execution issued thereon September 12, 1859, and levied on the premises in lot five, block one hundred and twenty, which were sold on the 24th of October following. This execution and levy were had within one year after the rendition of the judgment. From these facts, it is plain that Pomeroy, Benton & Co. were negligent, and let their time slip away without issuing execution, while Dowdall, Markham & Co. were diligent, and took out their execution and levied within the. time required by the statute. And it is a plain conclusion. of law, under this construction and application of the statute, that the purchaser, under the execution sale on the Dowdall, Markham & Co. judgment, not only took an estate in the premises absolved and discharged from the lien of the Pomeroy, Benton & Co. judgment, but that he also took such an estate in the premises as was vested in George Bridge, the debtor at the time the judgment was rendered. and the lien attached. In any view which may be taken of this question, I can arrive at but the one conclusion,

that, at the time of the Pomeroy, Benton & Co. execution
was issued and levied in 1863, George Bridge had no inter-
est in the premises levied upon and sold ; that both his
legal and equitable interest, and all his rights and title in
and to the premises had been wholly exhausted, and in the
attempt to levy and sell under the Pomeroy, Benton &
Co. judgment, the purchaser acquired no interest whatever
in the property.

The defendant, Finn,. alleges in his answer that the sale
to Markham on the execution issued on the Dowdall, Mark-
ham & Co. judgment, was fraudulent and void, both as
to the plaintiffs and George Bridge, and passed no title
from George Bridge to William H. Markham.  Mr. Hile-
man, in substance, makes the same allegations in his answer.
The complainant in his prayer asks that it be decreed that
the deed from Markham to Charles Bridge, executed Feb-
ruary 12, 1862, was in trust for George Bridge.  In his
argument he insists that when Charles Bridge purchased
and took from Markham the title acquired by him, the
mortgage was merged in the equity of redemption.  This
is urged mainly upon the ground that it cannot be true
that the estate acquired by Markham at the execution sale
was fraudulent ; that it was not so esteemed by Charles
Bridge, who paid for it, and that therefore it passed such
an estate as George Bridge had, and that was sufficient to
effect a merger of the mortgage.  There is no evidence in
the record which impeaches the validity of the Dowdall,
Markham & Co. judgment on the sale and confirmation
thereof.  The complainant cannot go to the answer for
facts which by his bill he did not put in issue.  The court
pronounces its decree *secundum allegata et probata. Crocket
v. Lee,* 7 *Wheat.* 522 ; *Jackson* v. *Ashton,* 11 *Peters,* 229 ;
*James* v. *McKernon,* 6 *John.* 564.  I can discover nothing
in the record which invalidates the execution sale to Mark-
ham, and it divested George Bridge from all interest in the

premises as effectually as if he had, by his own deed, conveyed to Markham for a valuable consideration.—*Ingersoll* v. *Sawyer*, 2 *Pick.* 279. But the complainant insists that Charles Bridge purchased the title of Markham in trust for George Bridge, the mortgagor. If this position should be sustained, the complainant would destroy his theory of merger of the mortgage in the equity of redemption. A conclusive answer to this is, that if Charles purchased in trust for George, then Charles took no beneficial interest in the premises. He was simply a holder of the title to the land for George. In this event the interest under the mortgage and purchase would be distinct and owned by two different persons ; and under this state of facts, a greater estate and a less, the interest of the mortgagee and the equity of redemption, could not meet and coincide in Charles, and without this there could be no merger. We have heretofore disposed of the question which drew in controversy the title derived from William H. Markham, but let us now inquire, did Charles Bridge purchase the Markham title in trust for George Bridge.. Mr. Woolworth was the only witness called and examined in respect of this matter, and he states that at the final settlement in the negotiations between Charles Bridge and Markham in regard to the purchase by Bridge from Markham, there were present Poppleton, Hamilton, Forbes and Megeath, and that Megeath, who had been the receiver of the rents and profits which had been adjudged by the court to belong to George Bridge, gave a statement of the rents, etc., received by him, and, according to witness' recollection, produced the money, that the whole amount was first paid to him, then by him paid to Forbes who deposited the same in the bank until his fees were agreed upon. The testimony of Finn shows that George Bridge was largely indebted to Charles Bridge, and there was then a large and unsatisfied balance remaining due by George to Charles on various transactions. The

fact is admitted that the money which Charles paid Markham for his title was the money arising from the rents and profits of the premises. That alone is hardly sufficient to establish the allegation that Charles bought in trust for George, especially when we consider the situation of the parties and of the litigation at that time and the fact that George was then largely indebted to Charles.

In equity, when the fraudulent intent is denied, the allegation of it cannot be helped by a presumption of fraud, unless the fact in evidence is conclusive; and the testimony of a witness who does not or cannot give the facts and circumstances which establish the allegation of fraud, in a clear and satisfactory manner, but states what may fairly be inferred from his testimony to be in substance, his understandings and inferences derived from conversations cannot aid the case.—*Wright* v. *Prescott,* 2 *Barb.* 196; *Powell* v. *Swan,* 5 *Dana,* 1. The evidence is wholly insufficient to establish the allegation of trust in Charles in favor of George Bridge. Suppose we admit that William H. Markham, up to the twelfth day of February, 1862, held and owned the equity of redemption to the east forty-four feet of lot five in block one hundred and twenty, and that by virtue of the purchase made on that day Charles Bridge then became the owner of the equity of redemption, the question then occurs, did the mortgage merge in the equity of redemption thus purchased by Charles Bridge? When does merger take place? It is said the general rule is that whenever a greater estate and a less coincide and meet in one and the same person without any intermediate estate, the less is immediately annihilated, or, in the law phrase, is said to be merged, that is, sank or drowned in the greater.—*James* v. *Morley,* 2 *Cow.* 284; 2 *Blackstone Com.* 177. The doctrine of merger has been discussed by the courts from an early period down to the present time; and if any principle of law seems to be well settled it may now be said that in

Miller *v.* Finn.

all cases when intervening rights interfere, or when the two
estates meet and it is necessary that the charge be kept on
foot to protect those interests, the courts will not enforce
a merger. In *Co. Litt.* 388, it is said "mergers were not
favored in courts of law, and still less in courts of equity."
They are never allowed unless for special reasons and then
only to preserve the intention of the parties.—*Philips* v.
*Philips*, 1 *P. Wm.* 41. When there is a union of rights
equity will preserve them distinct if the intention so to do
is either express or implied.

The distinction stated by Lord Hardwicke is, that when
the owner of the fee in which the charge would otherwise
merge, manifests his intent that the charge shall subsist, his
intent, if clear, shall prevail.—*Chester* v. *Willis, Amber,*
246. In *Compton* v. *Oxender*, 2 *Ves. Jr.* 264, Lord Thur-
low observed : "It is a clear principle, both at law and in
equity, that where there is no confusion of rights, when
debtor and creditor become the same person, there is an
immediate merger, but that equity will preserve the rights
distinct according to the intent, express or implied."
Whenever it is more beneficial for the person entitled to
the charge to let the estate stand with the incumbrance
upon it than to take it discharged of the incumbrance, that
circumstance will have a controlling influence in deciding
on the implied intent.—*Wade* v. *Paget*, 1 *Brown Ch.* 368.
In *Forbes* v. *Moffat*, 18 *Ves.* 364, Sir William Grant says :
"It is very clear that a person becoming entitled to an
estate subject to charge for his own benefit may, if he
choose, at once take the estate and keep the charge. Upon
this subject a court of equity is not controlled by the rules
of law. It will sometimes hold a charge extinguished
when it would subsist at law, and sometimes preserve it
when at law it would be merged." The question turns
upon the actual intention of the person in whom the in-
terests are united. In most instances it is of no use or

benefit to the party himself to have the charge on his own estate, and when that is the case it will be held to sink unless something shall have been done by him to keep it on foot. In *Hunt* v. *Hunt*, 14 *Pick.* 382, the court says it "can see no reason why a purchaser of the equity of redemption, whether of a part or the whole of the mortgaged premises, is in any respect disabled from becoming such assignee." He may consider his equity of redemption of small value, or of no value, or the title to it invalid or doubtful, and can there be any reason in law why he, who has the most urgent occasion for making such purchase to protect his own interests, should be disabled from doing so, and be placed, in this respect, in a worse condition than a stranger? In order to effect a merger at law, the right subsisting in an individual, and the right subsequently acquired in order to coalesce and merge, must be precisely co-extensive, must be acquired and held in the same right, and there must be no right outstanding in a third person to intervene the right held and the right acquired. If any of these requisites are wanting, the two rights do not merge, but both may stand together.—*Gibson* v. *Crehore*, 3 *Pick.* 382; *Gardner* v. *Astor*, 3 *Johns. Ch.* 53; *Millspaugh* y. *McBride*, 7 *Paige*, 509. The case of *Mills* v. *Comstock*, 5 *Johns. Ch.* 214, was decided on its own peculiar circumstances. The decree was made upon the ground that the assignment of the mortgage to Comstock was a deed of conveyance, and within the registry act of 1794, and not having been registered was fraudulent and void as to Mills, the subsequent purchaser, for a valuable consideration. By reason of the assignment being void, the mortgage was considered still in the hands of Herrick, and the deed from him to Mills being his first act legally affecting the transaction, or manifesting his intent, must necessarily be considered as conclusive evidence of his election or intent that the two estates should unite.

The deed itself purported to convey an estate which could not have passed unless a merger had taken place, but the chancellor put his decree on the ground of fraud. The facts show that Charles Bridge cannot be affected by the lapse of time in making his election or manifesting his intent. His execution of the mortgage decree by sale under the direction of the court within less than two months after he acquired the Markham title, is conclusive evidence of his intent that the charge should remain distinct. In the case of *Forbes* v. *Moffat*, the acts of the party were considered and examined for a series of ten years for some evidence of his intent, and none being found as decisive upon the point, the legal presumption of his intent was that the charge should not merge because it was his intent that it should not.—*Thompson* v. *Chandler*, 7 *Greenl.* 377 ; *Freeman* v. *Paul*, 3 *Greenl.* 260.

The rights of those incumbrancers, who were not made parties to the suit, cannot be affected by the decree. *Draper* v. *Earl of Clarendon*, 2 *Vernon*, 517 ; *Godfrey* v. *Chadwell*, 2 *Vernon*, 601 ; *Haines* v. *Beach*, 3 *John. Ch.* 464. This rule seems to be founded on the reason that it is indispensable to justice in case of a decree of sale, for otherwise the mortgagor would take the surplus money or the cash value of the equity of redemption, and thereby entirely defeat the rights of subsequent creditors. It seems to me clear, that the absolute right of such incumbrancers to redeem is, strictly speaking, the right to redeem a senior incumbrancer and not the premises, and thereby secure a conveyance of the land. This absolute right would be a subsisting one, up to the rendition of the decree and the actual sale of the premises thereunder, and as in the case of *Bennett* v. *Denniston*, 5 *Johns. Ch.* 35, if the tender of the money should be made to redeem such senior incumbrance, and there should be a refusal on the part of the mortgagee, and after such tender a sale should be had, it

would be illegal and void, for it would be a fraud upon judgment creditors and junior incumbrancers. In the case of *Pardee* v. *Van Allen*, 3 *Barb.* 537, it is said the owner of the junior incumbrance redeems not the premises, strictly speaking, but the senior incumbrance, and then he is entitled, not to a conveyance of the premises, but to an assignment of the security. And in the case of the *Bank of the United States* v. *Peter*, 13 *Peters*, 125, it is said, "It is a well settled principle in equity that a judgment creditor who is compelled to pay off a prior incumbrance on land to obtain the benefit of his judgment, may, by assignment, secure to himself the right of the incumbrance; and the same rule applies when a junior mortgagee, to save his lien, is obliged to satisfy a prior mortgage on the same estate. He stands as the assignee of such mortgagee, and may claim all the benefits under the lien that could have been claimed under the assignor." But when a foreclosure is had, and the decree completely executed, and the purchase money paid, and then an incumbrancer who was not made a party to the bill to foreclose, brings his action, the right of such incumbrancer to a decree to redeem the premises and receive a conveyance of the land mortgaged is not absolute. Under such circumstances, I apprehend the case presents to the court a question of equity which must be determined in such manner as to do justice to the parties; and if there is no fraud in obtaining the decree of foreclosure and sale, the owner of the land, under such sale, may be and should be protected in his title subject only to the payment of the creditor's just claim. I deem this rule to be well founded on the principle of justice and equity between man and man. No principle is more firmly and justly established than that he who comes into a court of equity must do equity.

The complainant brings this action as the owner of judgments which were incumbrances at the time of the suit to

MILLER *v.* FINN.

foreclose the Charles Bridge mortgage. The three judgment creditors who were not parties in the mortgage suit, were William Dean & Co., John Davis and Milton Rogers. The several other judgment creditors named in this bill were made parties and served with process. The complainant asks that he may be at liberty to redeem the premises and obtain the possession of the same. Suppose the premises are now worth in cash many times the mortgage security and these judgment liens, is it true that a court of equity is compelled to permit him to redeem and to sweep all this property, together with the improvements thereon, from the owner, and appropriate the same to himself, merely upon the payment of the mortgage debt, when the payment of the entire amount of his judgments may be secured and paid to him within a reasonable time? Would this be doing equity? Would it be justice between man and man? The complainant comes into a court of equity seeking equity, and would it be right for the court by its decree to make itself the instrument to secure to him property in value so largely in excess of what is justly coming to him; to turn over to him a large and valuable estate for one twentieth of what he could purchase the same estate for in open market, and by so doing deprive the respondents, in like proportion, of their property acquired by them without fraud or dishonesty? I cannot believe that any such rule has been established and settled as a principle of law, and if it had, I should regret to be compelled to follow it. In the case of *Vroom* v. *Ditmas*, 4 *Paige*, 531, it appears that Arnold and May, at the time the owners of the fee, mortgaged the premises to Watson; that Ditmas, by sundry conveyances, held the title of Arnold and May; that Vroom, the plaintiff, had two mortgages against Ditmas. The Watson mortgage was foreclosed against Ditmas and wife by statutory foreclosure, the premises bought by Bacon, who sold to Vanhorn, and

MILLER v. FINN.

Vanhorn sold to Smith. Vroom brought his action, and the court held that the two mortgages of the plaintiff were a lien upon the equity of redemption, notwithstanding the statutory foreclosure and the plaintiff entitled to redeem, unless the present owner of the premises should elect to pay off the amount due on those two mortgages. This case fully recognizes the rule adopted in this opinion, and leaves it with the court to do equity between the parties. Believing that such practice is founded on reason and the principle of equity, and the only one that can fully protect and secure the legal and equitable rights of all parties, I have no hesitation in giving it my hearty indorsement.

It follows then that the complainant being the owner of the judgments recovered by Davis and by Rogers, is, in respect of them, entitled to relief. That relief will be awarded to the full extent of what he is equitably entitled to by affording to the defendants an opportunity to pay those judgments. Should they fail to do so then the right of redemption will be absolute in the complainant.

A decree will be entered reversing that of the District Court, directing a reference to ascertain the amount due on the judgment named, requiring the defendants to pay that amount within thirty days from the confirmation of the master's report of the amount due; and in default of their so doing, requiring them to release their security to the complainant upon the usual terms of decrees for redemption of mortgages.

Decree of the District Court reversed, and a decree entered according to the directions of this opinion.

NOTE.—Mr. Justice LAKE having been of counsel in this cause did not sit therein, and Mr. Justice CROUNSE having made the decree appealed from, did not participate in the determination of the appeal, so that the Chief Justice sat alone upon the appeal.